376 A.2d 1.

NARRAGANSETT WIRE CO. *vs.* JOHN H. NORBERG,
*Tax Administrator.*

JULY 14, 1977.

PRESENT: Bevilacqua, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

598

BEVILACQUA, C. J. This is a petition for certiorari instituted under the appropriate provision of the Administrative Procedures Act, G.L. 1956 (1969 Reenactment) §42-35-16, to review a judgment of the Superior Court which reversed the decision of the tax administrator.

The respondent herein, Narragansett Wire Co. (Narragansett), is a manufacturer of 600 volt building wire which is used in the wiring of residential homes, apartments, hotels and other buildings. The wire is manufactured by Narragansett at its plant in Pawtucket, Rhode Island, and within the state is sold primarily through wholesalers and

electrical distributors. Sales to customers outside of Rhode Island are effected through independent manufacturer's representatives. Typically, a representative maintains a warehouse which is staffed by employees of the representative, consisting of a sales force, warehouse personnel to handle the storage and reshipment of the physical inventory, and clerical personnel who process orders and shipments. Representatives are compensated on a percentage of the sales made, ranging from 3 percent to 3¼ percent, and if the representative maintains a warehouse there is an additional 1¼ percent compensation rate. Representatives are not prohibited from carrying products which do not conflict with those of Narragansett.

On April 1, 1971, Narragansett was notified of business corporation taxes which were owed to the State of Rhode Island for deficiencies assessed during the period of time from 1964 to 1970. Narragansett protested these assessments, amounting to almost $520,000, and a hearing was held. Narragansett's major contention was that it was entitled to compute its tax liability by allocating its income as provided in G.L. 1956 (1970 Reenactment) §44-11-14. The hearing officer determined that that section was inapplicable since Narragansett did not have a regular place of business outside of Rhode Island. Relying on §44-11-13 he concluded that its entire net income should be apportioned to this state. The decision of the hearing officer was upheld by the tax administrator. On review the Superior Court reversed the tax administrator's decision, set aside the assessments, and granted the appropriate refunds. After reviewing the pertinent facts the trial justice concluded that the warehouses in which Narragansett's product was stored until retail distribution constituted regular places of business as that term is de-

fined in §44-11-1(e) and, thus, Narragansett was entitled to have its income allocated pursuant to the provisions of §44-11-14.

Incidental to determining whether Narragansett may allocate its income pursuant to §44-11-14 and the relation of that section to the preceding section, §44-11-13, is an appreciation of some of the problems raised by state taxation of interstate commerce.

It has long been recognized that the commerce clause of the Federal Constitution is a restriction on state regulation of interstate commerce. *Philadelphia & Reading R.R. v. Pennsylvania,* 82 U.S. 232, 21 L.Ed. 146 (1873). Accordingly, a state may not impose a tax which discriminates against interstate commerce in favor of local business, *Memphis Steam Laundry Cleaner, Inc. v. Stone,* 342 U.S. 389, 72 S.Ct. 424, 96 L.Ed. 436 (1952), or which subjects interstate commerce to the burden of "multiple taxation," *Michigan-Wisconsin Pipeline Co. v. Calvert,* 347 U.S. 157, 74 S.Ct. 396, 98 L.Ed. 583 (1954). Nevertheless, not all state taxation of interstate commerce is inimical to the commerce clause. While the Supreme Court has never squarely addressed the issue, it appears that the entire net income of a domestic corporation is not immune from taxation by the domiciliary state even though a portion of that income was generated from business activity arising out of interstate commerce. *United States Glue Co. v. Town of Oak Creek,* 247 U.S. 321, 38 S.Ct. 499, 62 L.Ed. 1135 (1918); *see New York ex rel. Cohn v. Graves,* 300 U.S. 308, 57 S.Ct. 466, 81 L.Ed. 667 (1937); *Lawrence v. State Tax Comm'n,* 286 U.S. 276, 52 S.Ct. 556, 76 L.Ed. 1102 (1932). Coextensively, a state has the right to tax a portion of the net income derived from the interstate operation of a foreign corporation provided the levy is reasonably apportioned to the income producing activity within the state and is not discriminatory. *Northwestern*

*States Portland Cement Co.* v. *Minnesota,* 358 U.S. 450, 79 S.Ct. 357, 3 L.Ed.2d 421 (1959).

Considering then the potentially overlapping taxing power which can be exercised by both the domestic and foreign states in which a corporation is operating, it is possible that interstate commerce would be subject to the burden of multiple taxation. Such a result would be unconstitutional. *Gwin, White & Prince, Inc.* v. *Henneford,* 305 U.S. 434, 59 S.Ct. 325, 83 L.Ed. 272 (1939). To preclude this possibility most states which have enacted statutes taxing corporate income do so only with respect to income which is fairly attributable to business activities or sources within the state. Discussing the concept of "business activities," the Supreme Court in *Northwestern States Portland Cement Co.* v. *Minnesota, supra,* stated that the income of a foreign corporation could be taxed on the basis of the activities within the state if the activities form a sufficient " 'nexus between such a tax and transactions within a state for which the tax is an exaction.' " *Id.* at 464, 79 S.Ct. at 365-66, 3 L.Ed.2d at 431, quoting from *Wisconsin* v. *J. C. Penny Co.,* 311 U.S. 435, 445, 61 S.Ct. 246, 250, 85 L.Ed. 267, 271 (1940). In order to prevent a state from taxing income of foreign corporations beyond the limit generally established in *Northwestern,* Congress enacted Public Law 86-272.[1] The Act prohibits states from taxing nonresidents on income derived from business activities within the state if the activities consist only of soliciting orders for the sale of tangible personal property and the orders are approved and filled within the state. Solicitations and sales by independent contractors, however, are not to be deemed business activities of the nonresident. *See Heublein, Inc.* v.

---

[1]73 Stat. 555 (1959), as amended, 15 U.S.C.A. §§381-84 (Supp. II 1961).

*South Carolina Tax Comm'n*, 409 U.S. 275, 93 S.Ct. 483, 34 L.Ed.2d 472 (1972).

Rhode Island's Business Corporation Tax clearly does not attempt to tax the entire net income of a corporation conducting income producing activities in interstate commerce. Nor does it create a distinction between a domestic and foreign corporation. Rather, it simply imposes an annual tax on every corporation deriving income from within the state or engaging in any activities for the purpose of profit or gains within the state. See §44-11-1(e). Thus section 44-11-2(1) imposes an annual tax at the prescribed rate on net income "* * * apportioned to this state as provided in §§44-11-13 through 44-11-15, inclusive * * *." The relevant provisions of these sections read as follows:

> "44-11-13. Entire net income of business wholly within state.—In the case of a taxpayer deriving all its income from sources within this state or engaging in activities or transactions wholly within this state for the purpose of profit or gain, or where the taxpayer does not have *a regular place of business outside this state other than a statutory office its entire net income shall be apportioned to this state.* (Emphasis added.)
> "44-11-14. Allocation of income from business partially within state.—In the case of a taxpayer deriving its income from sources both within and without this state or engaging in any activities or transactions both within and without this state for the purpose of profit or gain, its net income shall be apportioned to this state by means of an allocation fraction * * *."

Interpreting these sections the tax administrator contends that before a corporation can apportion its income pursuant to §44-11-14 it must first satisfy the applicable provision of the preceding section, 44-11-13. That is, a corporation must first establish that it had a "regular place of business" other than a statutory office outside of Rhode Island. We agree.

While we recognize that §44-11-14 refers only to a taxpayer deriving its income from sources, or engaging in *any* activities, both within and without this state, it is clear that the Legislature intended that it be read in conjunction with the immediately preceding statute, §44-11-13. See §44-11-2(1). Read thusly, and giving the effect to the applicable provisions of each statute, *see Bristol County Water Co.* v. *Public Util. Comm'n,* 117 R.I. 89, 363 A.2d 444 (1976), it is clear that a corporation's income derived from activities conducted outside of this state will not be excluded from Rhode Island's Business Corporation Tax unless it maintains a regular place of business outside of the state. Our conclusion in this respect is in consonance with the legislative purpose in creating a uniform corporate tax structure: income is fairly apportioned to the state, while avoiding the risks of double taxation, where the taxpayer's business activities provide a sufficient nexus with the state, as generally described in *Northwestern* and later codified in Public Law 86-272, whereby the taxpayer avails itself of the benefits and protections of the state and, therefore, should contribute to its support.

The tax administrator next contends that Narragansett does not have a "regular place of business" within the meaning of §44-11-1(e) since the warehouses it used to distribute its product in other states were owned or at least operated solely by Narragansett's representatives. He points out that Narragansett had no control or right of supervision over the employees of the representative or over the size and location of the representatives' warehouses. Thus the tax administrator concluded that Narragansett did not do business on its own account and while utilizing its own employees in any state other than Rhode Island. We perceive his argument to be that under these circumstances and in view of the controlling statutory

provisions Narragansett's sales transactions negotiated through its representatives in foreign states are to be regarded as business done in Rhode Island.

■ The term "regular place of business" is defined in §44-11-1(e) as "* * * any bona fide office (other than a statutory office), factory, warehouse, or other space which is regularly used by the taxpayer in carrying on its business." It is implicit in this definition that the use of such a premise by a taxpayer in carrying on its business provides a sufficient nexus with the taxing state whereby it could tax the corporate income which was fairly attributable to the property located therein. That being so a taxpayer would be entitled to apportion its income under §44-11-14. For example, as expressly provided in §44-11-1(e), a public warehouse located in a foreign state will be considered a place of business if it is used in the taxpayer's regular course of business as a storage facility until the taxpayer's property is shipped to its customers. The presence of such property empowers a state to tax the net income specifically attributable to that property and, thus, in order to avoid multiple taxation income, apportion its income. Section 44-11-14. On the other hand, §44-11-1(e) also provides that the "* * * mere consignment of goods by the taxpayer to an independent factor outside this state for sale at the consignee's discretion does not constitute the taxpayer as having a regular place of business outside this state." In analagous circumstances, such a result has been justified on the grounds that since such factors are independent contractors, for tax purposes the disposition of goods in their possession constituted a part of their business rather than the business of the corporation whose product they sell. *Irvine Co.* v. *McColgan,* 26 Cal.2d 160, 157 P.2d 847 (1945); 17 Fletcher, *Cyclopedia Corporations* §8484 (perm. ed. rev. repl. 1977); *see Tonka*

*Corp.* v. *Commissioner of Taxation,* 284 Minn. 185, 169 N.W.2d 589 (1969).

It is noteworthy that the relationship between Narragansett and its out-of-state representatives is not that of a consignor and consignee-independent contractor. Generally in such a relationship the consignee in disposing of the goods in his possession acts primarily for himself and thus cannot be considered the manufacturer's agent or representative. Restatement (second) *Agency* §14J (1958). *Compare Plibrico Jointless Firebrick Co.* v. *Waltham Bleachery & Dye Works,* 274 Mass. 281, 174 N.E. 487 (1931) with *Republic Steel Corp.* v. *Atlas Housewrecking & Lumber Corp.,* 232 Mo. App. 791, 113 S.W.2d 155 (1938). By comparison Narragansett's representatives are not acting primarily for themselves in this respect: significantly, title to the goods remains with Narragansett while in possession of its representatives; the price at which merchandise is sold and the size of the inventory at the warehouse locations is established and controlled by Narragansett; Narragansett pays for all freight charges including delivery from the warehouse to the wholesale customers; payment for purchased goods is made directly to Narragansett by the wholesale customers; and all pertinent forms dealing with transactions between representatives and customers identify Narraganset as the seller. Under these circumstances Narragansett's representatives are not independent factors receiving goods on consignment but rather agents of Narragansett acting in furtherance of its business. *See Tonka Corp.* v. *Commissioner of Taxation, supra; contrast Irvine Co.* v. *McColgan, supra, and Signal Thread Co.* v. *King,* 222 Tenn. 241, 435 S.W.2d 468 (1968).

Based upon fundamental principles of agency it follows from this that the representatives' activities with respect to Narragansett's goods constitutes the business activity

of Narragansett. Thusly considered, it only remains to determine whether Narragansett "regularly used" its representatives' premises within the literal meanings of the operative words found in §44-11-1(e): *any warehouse which is regularly used by the taxpayer in carrying on its business.* Examining those facts mentioned in the preceding paragraph and, more importantly, the following undisputed facts, we believe that it did.

During the years in question approximately 90 percent of the products sold by Narragansett outside of Rhode Island were shipped from its manufacturing plant in Pawtucket to various warehouse locations throughout the country. There the goods were stored until finally sold to Narragansett's wholesale customers. Orders from these customers were received and accepted at the particular warehouse and subsequently filled from existing stocks contained therein. In this fashion Narragansett was able to minimize the delay in shipping goods to its customers. Thus the location of warehouses outside of Rhode Island at which its goods could be conveniently purchased was an integral link in its marketing chain. Such sustained activity over a period of years involving the physical movement of Narragansett's product from its manufacturing plant to the warehouse for permanent storage until final sale and distribution in our opinion constitutes premises which are "regularly used" by a taxpayer in the ordinary course of business and, accordingly, entitle Narragansett to apportion its income pursuant to §44-11-14. The fact that Narragansett compensated its representatives on a commission basis is of no moment since our inquiry is directed to the manner in which Narragansett used its representatives' premises and not the measure by which it paid for that use.

The tax administrator finally contends that the trial justice substituted her judgment for that of the agency's

in violation of §42-35-15(g). In his brief the tax administrator stated that the trial justice's determination that the various warehouses located outside of Rhode Island constituted regular places of business of Narragansett contradicted a finding of fact in the hearing officer's decision which was adopted by the tax administrator.

Section 42-35-15(g) provides in pertinent part that the Superior Court shall not "substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." Ordinarily, then, a reviewing court may not substitute its own judgment for factual determinations made by an administrative agency. *Watson* v. *Gulf Stevedore Corp.*, 400 F.2d 649 (5th Cir. 1968); *Lemmon Transport Co.* v. *United States*, 393 F. Supp. 838 (W.D. Va. 1975); *In re Pell* v. *Board of Education*, 34 N.Y.2d 222, 313 N.E.2d 321, 356 N.Y.S.2d 833 (1974). Questions of law, however, are not binding upon the court and may be reviewed to determine what the law is and its applicability to the facts. *Retail, Wholesale and Dep't Store Union, AFL-CIO* v. *NLRB*, 466 F.2d 380 (D.C. Cir. 1972); *Ridgely* v. *Secretary of Dep't of HEW*, 345 F. Supp. 983 (D.Md. 1972); *Blue Earth County Welfare Dep't* v. *Cabellero*, 302 Minn. 329, 225 N.W.2d 373 (1974).

Examination of the trial justice's decision indicates that she reviewed and accepted the findings of the tax administrator. Her conclusion that Narragansett had regular places of business outside of Rhode Island was a question of law, however, and accordingly she was not bound by the tax administrator's determination to the contrary. *See Mayflower Sec. Co.* v. *Bureau of Sec.*, 64 N.J. 85, 312 A.2d 497 (1973); *Kirkpatrick* v. *Peet*, 247 Ore. 204, 428 P.2d 405 (1967); *Edidin* v. *Montgomery*, 15 Ill. App.3d 909, 305 N.E.2d 316 (1973) (per curiam).

The petition for certiorari is denied and dismissed, the writ heretofore issued is quashed, the judgment entered

by the Superior Court is affirmed, and the papers certified to this court are ordered returned to the Superior Court with our decision endorsed thereon.

*Alan P. Cusick,* for petitioner.

*Julius C. Michaelson,* Attorney General, *Allen P. Rubine,* Special Asst. Attorney General, *Perry Shatkin,* Chief Legal Officer, for respondent.