[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION
This is a civil action in the nature of an appeal from the decision of a hearing officer of the liquor control administration in the department of business regulation affirming a decision of the board of license commissioners of the City of East Providence granting the transfer of a class A license, by which the plaintiff claims it is aggrieved. This Court has jurisdiction under G.L. 1956 (1988 Reenactment) § 42-35-15.
The plaintiff holds a class A retail liquor sales license in the City of East Providence. On January 22, 1991 the East Providence board of license commissioners granted the transfer of a class A license from the defendant King Drug Company to Four Seasons Liquors, Inc. King Drug Company is the successor to the original holder of a class A license which was originally issued on October 6, 1936. Four Seasons Liquors, Inc. is qualified to hold a class A license. King Drug Company, and its predecessor, have always simultaneously held a class E retailer sales license.
The plaintiff contends first, that the hearing officer had no jurisdiction to hear its appeal and second, that the class A license is not transferable independent of the class E license.
Appeals from the decision of a local licensing authority granting the transfer of a class A license lie exclusively in the first instance to the liquor control administrator. § 3-7-21.
The liquor control administrator is a state officer appointed by the director of the department of business regulation with the approval of the governor. § 42-14-3. There is no statutory authority for the delegation of the authority and power of the liquor control administrator to any other person. The liquor control administrator has historically been regarded as a quasi-judicial officer with broad discretionary powers in the regulation of traffic in alcoholic beverages. It would be utterly inconsistent with the elaborate scheme of regulation of alcoholic beverages in title 3 of the general laws to allow any person with no statutory authority to exercise the important powers of the administrator.
The failure of executive officers to carry out the duties implied in § 42-14-3 is, however, no basis for relief to this plaintiff. See, for example, Kaskela v. Daneker,76 R.I. 405, 407 (1950).
If the plaintiff genuinely felt that the hearing officer had no power to pass on its appeal, it could have come before this Court for a declaratory judgment or other appropriate relief. Without ruling that the plaintiff waived any objection to the hearing officer's authority by appearing and submitting to his jurisdiction as if he were the administrator, the Court will nevertheless reach the legal issue raised in this litigation, since it is dispositive. Cf. Romano v. Daneker, 78 R.I. 79, 81, 79 A.2d 175 (1951). The facts are not in issue. The class A license is either transferable or not under the law. This Court would not be bound by the decision of the administrator on a pure question of law. Narragansett Wire Co. v. Norberg,118 R.I. 596, 376 A.2d 1 (1977).
Chapter 2013 of the Public Laws of 1933, entitled: "An Act to Promote Temperance in the Use of Alcoholic Beverages and to Control the Manufacture, Transportation, Possession, and Sale of such Beverage," marked the implementation of Repeal in Rhode Island to the joy of the multitude of long-parched throats yearning for a legal drink. Section 5 of that Act provided for a variety of licenses to sell alcoholic beverages at retail. Retailers who sold beverages in a sealed, unopened container or package ("package stores") were issued class A licenses to the extent permitted by the Act. In addition, licensed dispensers of medicines and poisons were authorized to hold class E licenses which permitted them to sell up to a quart of alcoholic beverage "for medicinal purposes and only upon the prescription of a duly licensed physician." The Act also provided: "It is permissible for the holder of a retailer's class E license to hold a retailer's class A license above described." The holders of both such licenses at the same time, however, could not sell more than one quart at one time to any one purchaser "of intoxicating beverages which are either in whole or in part the product of distillation." The Act was amended in several respects with regard to class E licenses each year so that by 1936, when King Drug's predecessor got his first class A license, Public Laws 1936, chapter 2338 included a proviso that holders of class E licenses who also held class A licenses were required to maintain, operate, manage or conduct a drugstore "as a self-contained and independent establishment and . . . not located in or be[ing] operated as a part of any market, department store or hardware store." The amended Act further provided: "For a class A license as above described, such holder of a class E license shall pay the regular annual license fee and shall have the full privileges of such a class A license." A "limited" class A license was authorized by legislation in 1934 and 1935 for cities and towns having a population of less than 10,000 inhabitants, which did not include East Providence. That provision was discontinued in 1936 for cities and towns with more than 10,000 inhabitants and thereafter only the "full privilege" class A license was authorized in East Providence for the holder of a class E license.
It is clear that although the class A license issued to King Drug's predecessor was a "full privilege" license, it was plainly conditioned on his operation of a self-contained drugstore. The "limited" class A license referred to in G.L. 1938, ch. 163, § 3, class E, for cities and towns having less than 10,000 inhabitants was not created in 1938. The 1938 general laws simply reenacted the provisions of the 1935 and 1936 public laws with respect to each class of cities and towns. Except for a brief period in 1935 the "limited" class A license referred to in G.L. 1938, ch. 163 § 3, class E, never was authorized in East Providence. The provisions of G.L. 1938, ch. 163, § 3 which applied to holders of both class E and class A licenses continued to require the holder to maintain, operate, or manage or conduct a self-contained and independent drugstore.
The legislative history of G.L. 1938, ch. 163, § 3 with reference to class A licenses granted to holders of class E licenses clearly discloses that P.L. 1949, c. 2373, § 3 did not change anything in the City of East Providence. That Act did affect licensing in the Town of East Greenwich. East Providence is not East Greenwich, as the residents of either will be happy to assure each other. The "limited" class A license abolished in 1949 was simply non-existent in East Providence after 1935. Accordingly, while the decision in Romano v. Daneker, supra,
is not dispositive one way or another, it unerringly points to the correct result in this case.
In Romano v. Daneker, supra, the Supreme Court held that the class A licenses issued pursuant to the 1949 public law to replace the limited class A licenses in cities and towns with less than 10,000 inhabitants were not transferable except to persons holding class E licenses. The Court reached its conclusion by finding no intention on the part of the general assembly by enactment of chapter 2373 to authorize the transfer of such class A licenses, calling them "special" because they were issued to replace "limited" licenses under special circumstances and not generally under the general provisions of the liquor control act. The Court reached that conclusion from "surveying the whole of chapter 163 of G.L. 1938, which prescribed the various classes of licenses, and carefully noting the purpose and scope of chapter 2373 in amendment thereof, . . ." Id., at 83.
An equally careful survey of every version of every beverage control act in this State since Repeal to the present demonstrates an intention on the part of the legislature that no class A license issued to the holder of a class E license may be transferred to anyone other than another holder of a class E license. Cf. G.L. 1956 (1987 Reenactment) § 3-7-5.
The hearing officer was clearly wrong as a matter of law when he concluded that: "The fact that King Drug Company has also held a class E license does not diminish the rights and powers that go with a full-privilege (sic) class A license." Based on the legislative history of the act and the long-continued requirement of the operation of an independent and self-contained drugstore by the holder of such a license this Court finds that a class A license issued to the holder of a class E license is not transferable except to another holder of a class E license. The fact that the holders of the class A license in issue in this case have continuously and simultaneously since 1936 held a class E license demonstrates conclusively that the class A license was issued pursuant to the class E license and that the conditions pertaining to its issuance attach to any subsequent holder as a matter of law.
The hearing officer erred when he incorporated the plaintiff's rationale that, "The fact that the license is held in tandem with a class E license has no relevance . . ." Indeed, it is that very "tandem" holding for fifty-five years which demonstrates that the class A license has been specially issued and renewed under the provisions of the law pertinent to class E licenses, and not according to the provisions of the law pertaining generally to class A licenses.
The appeal of the plaintiff is granted. The decision of the hearing officer is reversed. The decision of the board of licensing commissioners granting the transfer of a class A license from King Drug Co. dba Brooks Drug #32 to Four Seasons Liquors, Inc., dated January 22, 1991 is hereby vacated as illegal. All defendants are permanently enjoined from transferring the class A license to any person not the holder of a valid class E license. The plaintiff will present a form a judgment for entry on notice to the defendants.