DECISON
Bristol County Water Authority ("BCWA") appeals a decision of the Rhode Island State Labor Relations Board ("RISLRB"), granting the petition of Teamsters Local Union No. 251 ("Teamsters") to hold an election regarding their bid to represent certain employees of the BCWA. RISLRB held that certain BCWA employees were properly included in a collective bargaining unit. BCWA argues that said employees should have been excluded pursuant to G.L. (1956) § 28-9.4-2(b)(1)-(2), (4) on the grounds that their positions were supervisory, managerial, or confidential. This Court has jurisdiction pursuant to G.L. § 42-35-15(b). After reviewing the entire record and considering the arguments, the Court finds that all of the employees are either supervisory, managerial, or confidential, and that, thus, the RISLRB's determinations with regard to each position were clearly erroneous.
 Facts and Travel
The BCWA provides the water supply for the towns of Barrington, Bristol, and Warren, Rhode Island. The nine person Board of Directors that governs the BCWA is the entity's ultimate policy and decision making body. The BCWA Board is divided into three separate committees: Engineering, Audit/Finance, and Personnel/Retirement. BCWA's Executive Director, Pasquale DeLise ("DeLise"), is responsible for day-to-day operations and reports directly to the BCWA Board.
The Executive Director has two assistants that report directly to him: an Administrative Assistant and the Personnel and Purchasing Coordinator. Two department mangers-the Operations Manager and the Manager of Accounting and MIS-rank just under the Executive Director on the organizational hierarchy chart and report directly to him. The Distribution Superintendent, the Water Quality Supervisor, and the Production Superintendent-each of whom have rank and file employees under them-all report directly to the Operations Manager. The Manager of Customer and Commercial Services, who has several rank and file employees under her, reports directly to the Manager of Accounting and MIS. The rank and file employees include meter readers, laborers, mechanics, accountants, technicians, foremen, and customer service personnel, whom number approximately twenty-five employees.
The rank and file employees are represented by the Utility Workers of America ("UWUA"). In April 2000, the Teamsters filed a petition with the RISLRB seeking to represent the remainder of the above employees, excepting the Executive Director, DeLise. The Teamsters included seven signature cards with the petition, which was a sufficient number to warrant an election.
From May 2000 through February 2001, RISLRB held both formal and informal hearings on the matter. BCWA objected to the inclusion of said positions in a bargaining unit on the grounds that they were supervisory, managerial, or confidential. The RISLRB issued a four to three decision on December 13, 2001, finding that the evidence of record failed to establish that any of the subject positions were supervisory, managerial, or confidential. RISLRB therefore found that the positions were not excluded from the protection of the Municipal Employees' Arbitration Act, G.L. (1956) § 28-9.4-1 et seq.
On February 20, 2002, the BCWA filed a complaint in Superior Court pursuant to G.L. (1956) § 42-35-15(b), naming both RISLRB and the Teamsters as defendants. BCWA seeks the reversal of RISLRB's decision and the exclusion of each challenged position from the bargaining unit.[1]
In November 2002, this Court remanded this case to the RISLRB in order to determine whether BCWA's appeal was timely filed and, thus, whether this Court possesses subject matter jurisdiction over this claim.
 Jurisdiction and Review
The Court has jurisdiction over this matter pursuant to G.L. §42-35-15(b). This Court reviews agency decisions pursuant to §42-35-15(g):
 "The Court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
This Court is "limited to an examination of the certified record to determine if there is any legally competent evidence therein to support the agency's decision." Barrington Sch. Comm. v. Rhode Island State LaborRelations Bd., 608 A.2d 1126, 1138 (R.I. 1992) (citing Blue Cross Blue Shield v. Caldarone, 520 A.2d 969, 972 (R.I. 1987); NarragansettWire Co. v. Norberg, 118 R.I. 596, 607, 376 A.2d 1, 6 (1977)). This Court "is not to substitute its judgment on questions of fact for that of the agency whose actions are under review." Id. "This is so even in situations in which the court, after examining the certified record, might be inclined to view the evidence differently and draw different inferences from those of the agency below." Id. (citing Cahoone v. Boardof Rev. of the Dep't of Employment Sec., 104 R.I. 503, 506, 246 A.2d 213, 214-15 (1968)).
"If competent evidence exists in the record considered as a whole, the court is required to uphold the agency's conclusions." Id. "Legally competent evidence is `relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance.'" Arnold v. Rhode Island Dep'tof Labor and Training Bd. of Rev., No. 2001-237-M.P. (AA 00-82), R.I. Supreme Ct., slip op. at 3, 2003 R.I. LEXIS *71 (March 26, 2003) (quotingBarros, 710 A.2d at 684). Questions of law, however, are not binding on a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts. Carmody v. Rhode Island Conflicts ofInterests Comm'n, 509 A.2d 453, 458 (R.I. 1986). This Court may "reverse, modify, or remand the agency's decision" if, inter alia, the decision is "clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record or is arbitrary or capricious and is therefore characterized by an abuse of discretion." Barrington,
608 A.2d at 1138.
 Timeliness of Appeal
On November 1, 2002, this Court remanded this case to the Chairman of the RISLRB to determine the date of mailing notice for their decision of December 13, 2001. The date of said mailing was determinative of whether this Court possesses subject matter jurisdiction over this administrative appeal pursuant to G.L. 1956 § 42-35-15(b), which sets the period for timely filing an appeal at thirty days. In the instant matter, BCWA filed its complaint on February 20, 2002, which was more than thirty days after RISLRB issued its decision.
In Barrington Sch. Comm., 608 A.2d 1126 (R.I. 1992), the Supreme Court held that "to be appealable immediately an order or ruling of the labor board related to the process of resolving a representation controversy must not be capable of being mooted by the outcome of a subsequent representation election." Id. at 1132. The Supreme Court further stated that:
 "If a party could obtain review of . . . determinations sequentially, it would then be able to disrupt the board's orderly disposition of the controversy. Such interference with the workings of the board is preventable by forestalling any appeals of the board's actions that may prove to be unnecessary. Depending on the results of a representation election, all prior objections of an aggrieved party to the process of resolving a representation controversy may become moot. Consequently consideration of these objections before the election is held or before it is determined that an election is not to be held is premature and potentially a waste of agency and judicial resources. It is at such time that any injuries caused by the board's earlier determinations are felt in full and assessment of whether the board's final order provides an adequate remedy may be undertaken."
Id. (Footnotes omitted.)
Here, an election was held subsequent to RISLRB's decision of December 13, 2001. As a result, the thirty-day period for timely filing an appeal under § 42-35-15(b) tolled until the election results were certified by RISLRB. The Court therefore finds that the relevant date for commencing the appeal period was not the date of mailing notice, but rather the date that the subsequent election results were certified by the RISLRB, which occurred on February 11, 2002. Since BCWA filed its complaint on February 20, 2002, the appeal was timely under §42-35-15(b); thus, this Court has subject matter jurisdiction over this appeal.
 The Inclusion of the Positions in the Bargaining Unit
The Municipal Employees' Arbitration Act, G.L. (1956) § 28-9.4-1 et seq. ("Act"), declares that it is "the public policy of this state to accord to municipal employees the right to organize, to be represented, to negotiate, and to bargain on a collective basis with municipal employers." § 28-9.4-1. The Act defines municipal employees as "any employee of a municipal employer, whether or not in the classified service of the municipal employer." § 28-9.4-1(b). The Act excludes from that definition, inter alia, elected and administrative officials; board and commission members, and; confidential and supervisory employees. § 28-9.4-1(b)(1)-(2), (4). The Rhode Island Supreme Court has also held that managerial employees are to be excluded under the Act. See Town of North Providence v. Local 2334, 725 A.2d 888, 889 (R.I. 1998) (citing NLRB v. Bell Aerospace Co., Div. of Textron, Inc.,416 U.S. 267, 275 (1974), which held that Congress intended to exclude all managerial employees from the protection of the National Labor Relations Act ("NLRA")); Fraternal Order of Police, Westerly Lodge No. 10v. Town of Westerly, 659 A.2d 1104, 1106 (R.I. 1995) (citing State v.Local No. 2883, AFSCME, 463 A.2d 186, 189 (R.I. 1983)).
The significance of exclusion is that an excluded employee is not protected under the Act and is therefore prohibited from bargaining collectively with municipal employers. Regarding the rationale underlying the policy of exclusion, the Rhode Island Supreme Court noted that "the inclusion of managerial and supervisory employees in a collective-bargaining unit would create a conflict of interest that would upset the delicate balance of power between management and labor." Boardof Trustees, Robert H. Champlin Mem'l Library v. RISLRB, 694 A.2d 1185, 1189 (R.I. 1997) (citing Local No. 2883, 463 A.2d at 190) (rejecting the RISLRB's top level supervisory classification and reiterating "that all
supervisory employees must be excluded from collective bargaining" (emphasis in original)); Bell Aerospace, 416 U.S. 267; NLRB v. YeshivaUniv., 444 U.S. 672 (1980)); Local 2334, 725 A.2d at 889.
For guidance in resolving labor disputes, the Rhode Island Supreme Court has declared its willingness to look to federal labor law. DiGuiliov. Rhode Island Bhd. of Correctional Officers, 819 A.2d 1271, 1273 (R.I. 2003); Champlin Mem'l Library, 694 A.2d at 1189; Westerly Lodge No. 10,
659 A.2d at 1108. "Under the provisions of [the NLRA,]29 U.S.C. § 152(11), `supervisor' is defined as:
 any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.'"
Champlin Mem'l Library, 694 A.2d at 1189 (citing Westerly Lodge No. 10,
659 A.2d at 1108). Section 152(11) "is to be interpreted in the disjunctive and `the possession of any one of the authorities listed in that section places the employee invested with this authority in the supervisory class.'" Providence Hosp., 320 NLRB No. 49 717, 725 (1996) (citing Ohio Power Co. v. NLRB, 176 F.2d 385, 387 (6th Cir. 1949)). Thus, an employee who performs only one of the above listed functions is considered a supervisor, "so long as the performance of that function is not routine but requires the use of independent judgment." Rest HavenLiving Ctr., Inc., 322 NLRB 210, 210 (1996).
Managerial employees are defined as those who `"formulate and effectuate management policies by expressing and making operative the decisions of their employer' and because they must `exercise discretion within, or even independently of, established employer policy,' they must be `aligned with management.'" Local No. 2883, 463 A.2d at 190 (quotingYeshiva, 444 U.S. at 682-83). The Rhode Island Supreme Court has stated that "the exemption of supervisors and managers from the [A]ct grows out of a concern `that an employer is entitled to the undivided loyalty of its representatives.'" Id. (quoting Yeshiva, 444 U.S. at 682).
In order to determine whether an employee's position is confidential, the Rhode Island Supreme Court has utilized the NLRA's labor-nexus test, under which two different categories of municipal employees can qualify as confidential employees. See Champlin Mem'l Library, 694 A.2d at 1191 (citing Barrington, 608 A.2d at 1136). The first category includes "those confidential employees who assist and act in a confidential capacity to persons who formulate, determine, and effectuate management policies in the field of labor relations." Id. (quoting Barrington, 608 A.2d at 1136). The second category comprises those employees "who in the exercise of their regular duties `have access to confidential information concerning anticipated changes which may result from collective bargaining negotiations.'" Id. (quoting Barrington, 608 A.2d at 1136). Confidential employees are excluded from the Act because
 "it would be unfair for an employee who is entrusted with advance knowledge of his or her employer's labor relations policies to be able to share this information with a union that serves as that employee's collective bargaining representative. If a union were able to obtain such one-sided access to management's sensitive labor relations data, it would have a substantial and unwarranted advantage in its dealings with management."
Champlin Mem'l Library, 694 A.2d at 1191 (quoting Barrington, 608 A.2d at 1136).
BCWA argues that the positions in question are all supervisory, managerial, or confidential. BCWA therefore states that the RISLRB erred in its conclusions concerning said positions.
The positions at issue here are those the titles of which appear within blocks on the organizational chart. This Court will review each position in a manner reflective of the BCWA's organizational hierarchy, beginning with the Executive Director's two assistants and proceeding to the two major department managers-the Operations Manager and the Manager of Accounting and MIS-and concluding with the superintendents and managers under the two department managers.[2]
Administrative Assistant
The BCWA argues that the Administrative Assistant, Cidalia Harper ("Harper"), must be excluded from the bargaining unit because she is a confidential employee. The RISLRB found that Harper is responsible for such office duties as typing, filing, and telephone answering. Harper reports directly to the Executive Director, does all the typing for him, and her office is located directly outside his door. Harper types the monthly reports and agendas for the Board of Directors. Harper both prepares the notice of meeting for the Board of Directors and attends the meeting. When her attendance is requested, Harper sits in on Executive Sessions of the Board; labor issues have been discussed on several occasions. Harper prepares the minutes of the Executive Sessions. Harper does not attend meetings concerning the UWUA. The RISLRB concluded that Harper was not a confidential employee.
In Barrington Sch. Comm., the Rhode Island Supreme Court stated that under the first category of confidential employees, "the supervisor of the employee whose status is under consideration must have ongoing responsibility for developing labor policy." 608 A.2d at 1137. The Supreme Court noted that "this qualification is to prevent an employer from temporarily investing a supervisor with influence over labor matters so that his or her personal secretary or assistant might be precluded from belonging to a bargaining unit." Id. The Supreme Court upheld this Court's reversal of RISLRB's determination that the secretary to the business manager was not confidential was clearly erroneous. This Court held that since the business manager was fully involved in labor policy and his secretary had, inter alia, complete access to labor relations material and advance knowledge of the school committee's negotiating strategy, the secretary was therefore a confidential employee.
In the instant appeal, the record clearly reflects that the Executive Director formulated, determined, and effectuated labor policy in connection with the Board of Directors. The Executive Director participates in negotiating committees that negotiate and make, reject, and/or accept labor issue proposals to the UWUA on behalf of the BCWA.See Transcript vl. II at 42-46. Therefore, the concern underlying the qualification above is not present and Harper falls under the labor-nexus test's first category of confidential employees-those "who assist and act in a confidential capacity to persons who formulate, determine, and effectuate management policies in the field of labor relations." ChamplinMem'l Library, 694 A.2d at 1191 (quoting Barrington, 608 A.2d at 1136).
The record also reflects that as the Executive Director's assistant, Harper was privy to information concerning negotiations with the UWUA both at Executive Sessions where wage increases for the UWUA employees were discussed and when she typed the minutes of those meetings. See
Transcript vl. I at 79-84. The record also reflects that Harper types, files, and prints the Executive Director's handwritten letters concerning employee discipline, union grievances, and general communications between him and UWUA representatives. Transcript vl. II at 46-50. Although her contact with labor relations issues may be periodic, the record demonstrates that this contact has occurred repeatedly in the past and will inevitably continue in the future.
It is evident from the record that the Administrative Assistant to the Executive Director acts in a confidential capacity to the Executive Director. Harper is the Executive Director's personal administrative assistant and is "primarily responsible for the preparation and handling of sensitive labor relations material in his office. As a consequence, [this Court finds that] her position is plainly a confidential one under the labor-nexus test," Barrington, 608 A.2d at 1139, and, thus, the RISLRB's decision to the contrary was clearly erroneous.
Personnel and Purchasing Coordinator
The BCWA argues that the Personnel and Purchasing Coordinator, Maria Neves ("Neves"), must be excluded from the bargaining unit because her participation in hiring committees renders her a "supervisor" as defined by the Act. The RISLRB found that Neves maintains and updates employees' personnel files for such changes as salary, recommendations, and thank you letters. Neves reports directly to the Executive Director. Neves has served on hiring committees that have effectively recommended seven candidates for employment.
Regarding the hiring committees, the BCWA utilizes these committees to choose the most qualified candidate for an open position. The Executive Director chooses which employees will serve on the hiring committee. The record reflects that the hiring committee is usually composed of three or more persons and this composition is usually representative of the department where the open position exists. For example, the Executive Director testified that if there was an open position in the commercial and accounting and public relations department, then the hiring committee would consist of the Manager of Accounting and MIS, the Manager of Customer and Commercial Services, and the Personnel and Purchasing Coordinator. Transcript vl. II at 64.
The record reflects that each employee on each different hiring committee has more or less the same responsibilities. The hiring committee reviews job applications and selects candidates that it seeks to interview. Id. at 20. After the interviews, the hiring committee then selects the top candidate and recommends that candidate for hire to the Executive Director. The Executive Director has the final decision, but the record clearly reflects that the Executive Director always defers to the hiring committee, even when he does not agree with its recommendation. See id. at 40-41. It is thus evident from the record that the BCWA's hiring committees make effective recommendations to the Executive Director for the hiring of employees. See University ofVermont, 223 N.L.R.B. 423, 426 (1976) (holding that since most recommendations of department chairmen concerning promotions, tenure, and leave are uniformly followed by the dean, the recommendations are highly effective and the department chairmen are thus supervisors within the meaning of the Act).
While on the hiring committees, Neves reviewed applications, assisted in the selection of candidates for interviews, interviewed candidates, and assisted in the selection of candidates for hire. Furthermore, Neves playes an even greater role than other members of the hiring committees because she places advertisements for open positions, sets up interview appointments for each prospective candidate, and processes internal job postings. See Holly Farms Corp., 311 N.L.R.B. No. 37 273, 297 (1993) (holding that employee was a supervisor within meaning of the Act where the employee participated in committees that effectively recommended applicants for employment and had a greater administrative role in the hiring process than others on the hiring committee).
The record reflects that Neves participated in hiring committees that effectively recommended at least six persons for hire.[3] Transcript vl. II at 12. A "supervisor" is defined as one who has the authority to effectively recommend another employee for hire. See Champlin Mem'lLibrary, 694 A.2d at 1189 (quoting the NLRA, 29 U.S.C. § 152(11)). Moreover, service on the hiring committees requires Neves to exercise her independent judgment in aiding the committee in the selection of a qualified candidate for hire. In order to be a "supervisor" under the Act, "the exercise of . . . authority [may not be] of a merely routine or clerical nature, but requires the use of independent judgment."29 U.S.C. § 152(11). As a consequence, the position of Personnel and Purchasing Coordinator is plainly that of a supervisor as defined by the Act. This Court thus finds that the RISLRB's determination that Neves was not a supervisor was clearly erroneous.
Operations Manager
The BCWA argues that the Operations Manager, Michael Munroe ("Munroe"), must be excluded from the bargaining unit because his position is supervisory, managerial, and confidential. The RISLRB found that although Munroe has no power to hire or fire employees on his own, he has served on thirty or more hiring committees and every recommendation from those committees has been approved by the Executive Director. The RISLRB found that Munroe had issued one letter of discipline, but that it did not require independent judgment because the penalty was parceled out according to the BCWA's code of conduct. Munroe also possesses the authority to approve vacation time, other leave, and time sheets. Finally, the RISLRB found that Munroe has served on negotiating committees that negotiate with unionized employees for over twenty years.
Although not mentioned in the RISLRB's findings, the record also reflects other relevant evidence concerning Munroe's position. Munroe reports directly to the Executive Director. He is responsible for the production, treatment, and distribution of water. Munroe has five employees directly under his supervision: the Engineering Technician, the Assistant Engineer, the Distribution Superintendent, the Water Quality Supervisor, and the Production Superintendent. These employees report directly to Munroe. BCWA Exhibit Nos. 1, 2. Munroe assigns work projects to those employees under him. Transcript vl. IV at 11-12. Subject to the Executive Director's approval, Munroe answers union grievances from union employees. Id. at 12-13, 44-45.
Based upon the evidence of record, this Court finds that the RISLRB's decision that the Operations Manager is not a supervisory position was clearly erroneous. As noted above, Munroe has served on over thirty hiring committees that have effectively recommended candidates for hire.See discussion supra Personnel and Purchasing Coordinator, at 12-13. Thus, for the reasons articulated above concerning Neves, the Court finds that the position of Operations Manager is plainly that of a supervisor as defined under the Act.
Furthermore, the evidence of record plainly reflects that Munroe is a confidential employee. For over twenty years, Munroe has helped the BCWA formulate and effectuate labor policy by serving on negotiating committees that negotiate with the unionized employees. As such, Munroe has effectively recommended that certain policies be adopted and is privy to the strategy that the Board of Directors and the Executive Director wish to take regarding labor relations. See Champlin Mem'l Library, 694 A.2d at 1191 (holding that confidential employees are those who "assist and act in a confidential capacity to persons who formulate, determine, and effectuate management policies in the field of labor relations"). The Court thus finds that the RISLRB's determination that Munroe is not a confidential employee was clearly erroneous.
Manager of Accounting and MIS
The BCWA argues that the Manager of Accounting and MIS, Webster Goodwin ("Goodwin"), must be excluded from the bargaining unit because his position is supervisory, managerial, and confidential. The RISLRB found that Goodwin is responsible for the care of the assets, liabilities, revenue extremes and expenses of the BCWA. Goodwin prepares monthly financial statements, handles the transfer and investment of funds (between thirteen and fifteen million dollars), and develops financial policies and procedures. Goodwin has served on hiring committees that have effectively recommended candidates for hire.
The Court finds that the RISLRB's conclusion that Goodwin is not a supervisor is not supported by the reliable, probative, and substantial evidence of record. Since the reasons for this are nearly identical to those laid out for Munroe, the Court does not find it necessary to substantiate its findings with the same detail as it did above. Like Munroe, Goodwin is a "supervisor" as defined in the Act because he has served on hiring committees that have effectively recommended candidates for employment. See discussion supra Personnel and Purchasing Coordinator, at 12-13.
The record also clearly reflects that Goodwin is a confidential employee because of his assistance with the formulation of labor relations policy. See Champlin Mem'l Library, 694 A.2d at 1191 (holding that confidential employees are those who "assist and act in a confidential capacity to persons who formulate, determine, and effectuate management policies in the field of labor relations"). The RISLRB found that Goodwin, along with Munroe and DeLise, served on the negotiating committees that negotiated with the UWUA in 1997 and 2000. Goodwin drafted and presented a vacation proposal that was accepted by the UWUA. Goodwin also attended Executive Sessions of the Board, where union negotiations were discussed. Goodwin also answers grievances filed by members of the UWUA. The Court therefore finds that RISLRB's determination that Goodwin was not a supervisory or confidential employee was clearly erroneous.
Furthermore, the record clearly reflects that Goodwin is a managerial employee. Goodwin formulates and effectuates management policies, and also exercises discretion in his management of the BCWA's assets. Transcript vl. III at 4-5; see Local No. 2883, 463 A.2d at 190. This Court thus finds that based upon the evidence of record, Goodwin is a managerial employee under the Act, and that the RISLRB's decision to the contrary was clearly erroneous.
 Distribution Superintendent
The BCWA argues that the Distribution Superintendent, Charles Lewis ("Lewis"), must be excluded from the bargaining unit because his position is supervisory, managerial, and confidential. The RISLRB found that Lewis is responsible for overseeing the day-to-day operations of the water distribution system, making sure that the system is properly maintained, and making sure that customers are properly served. Lewis reports to the Operations Manager, Munroe, on a daily basis.
Although Lewis is relatively new to his position as Distribution Superintendent, the record reflects that he has served on a hiring committee that effectively recommended a candidate for hire for a job opening in his department. Transcript vl. I at 31-32; see discussion supra Personnel and Purchasing Coordinator, at 12-13. Thus, just as the Court has determined in regard to Neves, Munroe, and Goodwin, Lewis is a "supervisor" as defined by the Act.
Moreover, it is evident from the record that Lewis is the supervisor of the seven employees under him. As the RISLRB found, Lewis schedules work for the employees in his department and he checks to make sure the employees are performing the fieldwork. Lewis possesses the authority to demand overtime from said employees. He assigns their work and schedules and makes sure the work assigned is performed. Unlike the employees under him, he does not wear a uniform, is salaried as opposed to an hourly wage earner, has business cards provided to him by the BCWA, and cannot perform bargaining unit work. The Court therefore finds that the RISLRB's determination that Lewis is not a supervisor was clearly erroneous.
Production Department Superintendent
The BCWA argues that the Production Superintendent, Dominic Signoli ("Signoli"), must be excluded from the bargaining unit because he is a supervisory employee. The record reflects that Signoli directs the day to day management, development, and operation of the production facilities, such as reservoirs, wells, pumping stations, treatment facilities, and storage facilities. Signoli reports to the Operations Manager, Munroe.
The RISLRB found that Signoli served on hiring committees. The record reflects that Signoli served on hiring committees that made effective recommendations for the hiring of candidates. See discussion supra
Personnel and Purchasing Coordinator, at 12-13. The record also reflects that Signoli supervised eight employees that report to him on a daily basis. Signoli can authorize unscheduled overtime, but usually seeks permission from Munroe to schedule overtime. Signoli authorizes his employees' vacation requests and other time off. Unlike the employees under him, Signoli does not wear a uniform, is salaried, and has business cards furnished to him by the BCWA. Based on the evidence of record, this Court finds the RISLRB's determination that Signoli is not a supervisory employee was clearly erroneous.
Water Quality Supervisor
The BCWA argues that the Water Quality Supervisor, Dalton Whitford ("Whitford"), is a supervisory employee, and, thus, must be excluded from the bargaining unit. The RISLRB found that Whitford is responsible for monitoring and maintaining water quality in the treatment process and distribution system. Whitford reports to the Operations Manager, Munroe.
Like the employees discussed above, Whitford has served on hiring committees that have made effective recommendations for hire. See
discussion supra Personnel and Purchasing Coordinator, at 12-13. Moreover, the record reflects that Whitford has effectively recommended an employee's termination to the Executive Director.[4] Transcript vl. I at 44. Since a "supervisor" is defined as one who can effectively recommend the hiring or firing of an employee, Whitford is a "supervisor" under the Act. The Court thus finds that the RISLRB's determination that Whitford is not a supervisor was clearly erroneous.
Manager of Customer and Commercial Services
The BCWA argues that the Manager of Customer and Commercial Services, Jan Williams ("Williams"), must be excluded from the bargaining unit because she is a supervisory employee. The RISLRB found that Williams is responsible for overseeing customer service and meter reading, cash receipts, accounts payable, and payroll. Williams reports directly to the Manager of Accounting and MIS, Goodwin. Williams supervises ten employees. The RISLRB also found that Williams reviews time sheets and can authorize overtime, unscheduled vacation, and personal time. Williams prepares work schedules for meter readers.
The RISLRB found that Williams has served on hiring committees. The record reflects that she served on hiring committees that made effective recommendations for the hiring of candidates. See discussion supra
Personnel and Purchasing Coordinator, at 12-13. The RISLRB also found that, after obtaining the approval of Goodwin, Williams has issued written warnings to employees on three occasions; thus, she has effectively recommended that discipline warnings be issued. Moreover, unlike the other employees in her department, Williams is a salaried employee and is provided business cards by the BCWA. Since a "supervisor" is defined as one who has the authority to effectively recommend the hiring or disciplining of an employee, it is evident from the record that Williams is a supervisory employee. See Champlin Mem'l Library, 694 A.2d at 1189. The Court thus finds that the RISLRB's determination that Williams is not a supervisory employee was clearly erroneous.
 Conclusion
The reliable, probative, and substantial evidence of record reflects that the employees in the positions at issue here are the Executive Director's right-hand people. These are the employees that the Executive Director relies upon to manage the day to day operations of the BCWA and supervise the unionized employees. These are also the people to whom the Executive Director looks to, in confidence, for input, recommendations, and general assistance. Verily, these are exactly the kind of positions that the Act and G.L. (1956) § 28-9.4-2(b)(1)-(2), (4) were meant to exclude from protection.
Based upon the reliable, probative, and substantial evidence of record, this Court finds that the RISLRB's conclusion that these employees were not supervisory, managerial, and/or confidential was clearly erroneous. This Court therefore reverses the decision of the RISLRB and excludes all of the disputed positions from the bargaining unit. Counsel are directed to confer and submit to this Court the proper order for entry after notice.
[1] Originally, BCWA's complaint also sought reversal of RISLRB's decision because RISLRB held elections during the pendency of the Teamsters' unfair labor practice charge against BCWA. BCWA has agreed by stipulation, however, not to pursue that claim.
[2] A note in regard to the RISLRB's decision, RISLRB included in the decision its view of the relevant law, it then made its detailed findings of fact, and it then superficially made form conclusions of law that were identical for every position. Since the RISLRB's decision contains such detailed findings and conclusions, however, this Court can infer the rationale underlying the decision.
[3] Neves testified to one instance where the Executive Director rejected the hiring committee's recommendation, Transcript vl. II at 14; however, the record reflects that the rejection was based on the elimination of the position that was advertised rather than the committee's choice of candidate, id. at 40-41, 62-64.
[4] The Executive Director accepted Whitford's recommendation; however, since the employee was protected by a labor contract, the case went to arbitration, where the employee won his reinstatement.