DECISION
Plaintiff Carl J. Ricci ("Ricci"), on behalf of his daughter, Emanuelle C. Ricci ("Emanuelle"), appeals from a decision of a hearing officer of the Rhode Island Department of Human Services ("DHS"), denying his application to receive medical assistance. Ricci seeks reversal of that administrative decision on the basis that the hearing officer failed to follow a prior administrative decision wherein she granted medical assistance to a child with the same medical condition and similar level of care as that of Emanuelle. Ricci also seeks reversal based upon his allegation that DHS and the hearing officer in this case engaged in ex parte communications. DHS counters, arguing that the hearing officer properly conducted a de novo review and, in doing so, set forth and substantiated appropriate findings of fact to support her decision to deny medical assistance. With respect to ex parte communications, DHS adamantly rejects any allegation of impropriety on its part. Jurisdiction is pursuant to G.L. 1956 § 42-35-15. For the reasons set forth in this Decision, this Court remands this case to DHS for further proceedings consistent with this Decision. *Page 2 
 I Facts and Travel
Emanuelle Ricci, an infant child born on April 18, 2006, was diagnosed with Spina Bifida, a congenital birth defect which affects the central nervous system. On May 17, 2006, Ricci, as parent and natural guardian of Emanuelle, submitted an application to DHS for medical assistance through the Katie Beckett Program. To be eligible for medical assistance through the Katie Beckett Program, a child must be disabled and require the level of care provided in a hospital, nursing facility, or an intermediate care facility/mentally retarded (ICF/MR).
Because Emanuelle was an infant at the time of her application, DHS only evaluated her for possible hospital and nursing facility level of care. Admin. Hr'g Tr., September 21, 2006, at 8. Ashley Price, M.D. ("Dr. Price"), a clinical reviewer for DHS, conducted the initial clinical review and determined that Emanuelle was disabled, but failed to meet the institutional level of care criteria. Id. at 5. Subsequently, on August 15, 2006, DHS denied Emanuelle medical assistance through the Katie Beckett Program. Agency Ex. 3.
Ricci timely appealed from DHS's decision, and a hearing was held on September 21, 2006. At the hearing, Ricci testified that Emanuelle required catheterization every three to four hours throughout the day to void her bladder and maintain its elasticity, and that he and his wife were required to be trained to catheterize as a precondition of Emanuelle's release from the hospital. Admin. Hr'g Tr., September 21, 2006, at 18-22, 25-26. Ricci argued that catheterization was not normal infant care, but skilled nursing care, not ordinarily expected of parents, which was time consuming, interfered with Emanuelle's age appropriate activities, and required sterilization procedures as well as specialized observation and assessment. Id. at 19-24. *Page 3 
Ricci also testified that if he or his wife were unavailable to perform the procedure, it would have to be performed by a qualified nurse.Id.
To highlight the enormity of Emanuelle's medical condition, Ricci submitted a letter wherein Dr. Stuart Bauer, Emanuelle's Urologist, stated that failure to perform catheterization would result in multiple consequences, including urinary tract infections and kidney damage.Agency Ex. 8. Lastly, Ricci testified that Emanuelle had decreased motor functioning in her lower extremities, which required both bracing and physical therapy once a week through Early Intervention and in-home care. Admin. Hr'g Tr., September 21, 2006, at 26-28.
Also, during the hearing, Ricci requested that the hearing officer submit into evidence a prior administrative decision ("2005 Decision") wherein she granted medical assistance to a child diagnosed with Spina Bifida who also required catheterization, bracing, and physical therapy.Id. at 31; Pl.'s Ex. A.[1] The hearing officer refused to consider the prior decision, stating that administrative decisions do not set precedent and that she must analyze each case individually and independent of other decisions. Admin. Hr'g Tr., September 21, 2006, at 31.
At that same hearing, three DHS representatives appeared and provided testimony: DHS supervisor and registered nurse for the Katie Beckett Program, Ms. Nolan Byrne ("Ms. Byrne"); clinical reviewer for the Katie Beckett Program, Dr. Price; and DHS legal counsel, Deborah Barclay ("Ms. Barclay"). At the outset of the hearing, Ms. Byrne verified that Dr. Price conducted the initial clinical review and that he had determined that Emanuelle was disabled, but did not require the level of care provided in either a hospital or nursing facility. Id. at 5. Ms. Byrne testified that DHS denied Emanuelle medical assistance because her level of care did not require institutional placement in either a hospital or nursing facility and was not *Page 4 
specialized, complex, time consuming treatment that substantially altered her daily routine or ability to perform age appropriate activities and did not substantially exceed age appropriate assistance.Id. at 8-9. In support, Ms. Byrne argued that catheterization was similar to other procedures for children, such as insulin treatment for diabetes and respiratory treatment for asthma, which parents or family members outside of an institution were expected to perform.Id. at 31-33. Dr. Price specifically testified that if Emanuelle's parents were unavailable or unwilling to perform the catheterization, Emanuelle would be placed with an adult who was willing to perform the procedure, instead of in a nursing facility. Id. at 34-35.
In a decision dated October 16, 2006 ("First Decision"), the hearing officer upheld DHS's decision to deny Emanuelle medical assistance, concluding that Emanuelle had a disabling condition that required medical intervention, but that her current level of care would not ordinarily be provided in a hospital or nursing facility, if such care was not provided in her home. Pl.'s Ex. B. In making this determination, the hearing officer considered evidence which included Emanuelle's current medical records, DHS's Level of Care Criteria and Guidelines, a form in which Emanuelle's primary care physician, Howard G. Silversmith M.D., indicated that it was his opinion that Emanuelle did not meet the required level of care, and the testimony presented by Ricci and DHS representatives at trial. Id.; Agency Ex. 4.
On November 22, 2006, Ricci filed a Motion for Reconsideration, arguing that the hearing officer erred by failing to apply the same analysis that she had engaged in the 2005 Decision wherein she granted medical assistance to a child who was diagnosed with Spina *Page 5 
Bifida and required a similar level of care as that of Emanuelle.[2]Pl.'s Ex. C. DHS granted Ricci's motion in order to afford Ricci the opportunity to fully develop the record by arguing the significance of the 2005 Decision and allow the hearing officer to consider the 2005 Decision. G.L. 1956 § 42-35-15(e). On January 3, 2007, a supplemental hearing was held before the initial hearing officer, wherein Ricci and DHS representatives, Ms. Byrne and Ms. Barclay appeared and provided testimony. Agency Ex. 15. Dr. Price was not present at the supplemental hearing.
In a decision dated January 29, 2007 ("Second Decision"), the hearing officer upheld her decision to deny Emanuelle medical assistance through the Katie Beckett Program, finding that though Emanuelle had a disabling condition, "she does not currently have a need for treatment or combination of treatments that would normally be performed in a nursing facility." Pl.'s Ex. D. The hearing officer concluded as follows:
 [T]he objective medical evidence, separate and apart from the treating physician's opinion on the AP72.1, does not establish a need for such ongoing, intense, complex, time-consuming treatments that substantially alter the appellant's daily routine or her ability to engage in age appropriate activities. The appellant's medical condition is currently stable and free of complications. Catheterization takes approximately 10 minutes, and is performed six times per day, for a total of approximately 1-hour of this type of specialized care each day. Per the father's testimony, the appellant also requires PT once per week supplemented by home exercises, as well as recently being prescribed orthodontics due to mobility issues. The record is absent of any PT records. The medical records do provide evidence of slight motor problems in the feet, but as noted previously, the record does not indicate limitations to such a degree as to be considered significant enough to *Page 6 
interfere with the appellant's ability to engage in age appropriate activities or require PT services normally provided in an institutional setting. Though the appellant, as a disabled child, clearly requires some extra care, the evidence does not establish daily ongoing care to the level as would be provided in a Hospital or Nursing Facility. Id.
In addressing the significance of the 2005 Decision in relation to Emanuelle's case, the hearing
officer concluded as follows:
 In rendering an Administrative decision, an Appeals Officer must review and consider the full record, including all the facts and evidence, as well as the testimony and presentations by the Agency and the appellant. Though evidence is clearly important and should be given weight in the Appeals Officer's decision making, the presentations by both sides, specifically the testimony and arguments in support of their positions on the matter, must also be considered. No two cases are identical in evidence, testimony, and presentations. Though similarities are evident in the two cases, there are also differences in all three of these areas. Therefore, it cannot be concluded, as the appellant's father proposes, that since both children have been diagnosed with the same condition and that since both require catheterization, bracing, and PT, that this appellant should also receive the same favorable decisions as was awarded the child in the prior Administrative decision. A full comparison analysis of the two cases is impossible when only the prior decision, and not the full record in that case is available, and this appeals officer will therefore refrain from attempting such. In order for a fair and accurate decision to be made, and to avoid acting in an arbitrary and capricious manner, the appeals Officer must review and consider each case individually, separate and apart from all others. Id.
On February 27, 2007, Ricci filed a timely appeal to the Superior Court. On appeal, Ricci avers that DHS's decision to deny Emanuelle medical assistance through the Katie Beckett Program was clearly erroneous in view of the reliable, probative and substantial evidence on the whole record because Emanuelle's current medical care meets several, if not all, of the nursing facility level of care criteria. In particular, Ricci highlights that among other medical treatments, which include bracing and physical therapy, Emanuelle requires catheterization throughout the day. Ricci argues that catheterization is not normal infant care, but skilled nursing care, which, if he or his wife were unwilling or unable to provide, would have to be performed by a qualified nurse. In this respect, Ricci argues that the hearing officer *Page 7 
acted arbitrarily and capriciously when she failed to follow a factually similar 2005 Decision wherein she granted medical assistance to a child based on her determination that catheterization required skilled nursing care. Ricci further contends that the hearing officer failed to set forth appropriate findings of fact to support her decision to deny medical assistance because she refused to engage in a comparison between the 2005 Decision and Emanuelle's case, and consider all of the relevant factors under DHS's nursing facility level of care criteria. Moreover, during oral argument heard before this Court on January 4, 2008, Ricci argued that a review of the record supports a reasonable inference that DHS and the hearing officer in this case engaged in ex parte communications. Ricci requests this Honorable Court to grant Emanuelle medical assistance through the Katie Beckett Program and award reasonable attorney's fees pursuant to the Equal Administration of Justice Act ("EAJA"). G.L. 1956 § 42-92-3.
Conversely, DHS maintains that Emanuelle's current level of care is not of such intensity as to require the care provided in either a hospital or nursing facility because it is not specialized, complex, time consuming treatment that substantially alters her daily routine or exceeds age appropriate assistance. DHS points out that the standard for determining eligibility for medical assistance is not whether a child requires skilled nursing care, but whether a child's level of care would require institutionalization if such care was not provided in the home. DHS contends that the hearing officer was not bound to follow a prior administrative decision and that she properly considered all of the evidence presented and set forth specific findings of fact and conclusions of law to support her decision. Lastly, DHS adamantly rejects Ricci's allegation that the department and the hearing officer engaged in ex parte communications. *Page 8 
 II Standard of Review
This Court's review of an administrative decision is guided by the provisions of R.I. Gen. Laws 1956 § 42-35-15(g), which states as follows:
 The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inference, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
In reviewing an agency decision, this Court is limited to an examination of the certified record in deciding whether the agency's decision is supported by substantial evidence. Center for Behavioral Health, R.I.,Inc. v. Barros, 710 A.2d 680, 684 (R.I. 1998) (citations omitted). Substantial evidence has been defined as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance."Wayne Distrib. Co. v. R.I. Comm'n for Human Rights, 673 A.2d 457, 459
(R.I. 1996) (citing Newport Shipyard Inc. v. R.I. Comm'n for HumanRights, 484 A.2d 893, 896 (R.I. 1994)). This Court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. Interstate Navigation Co. v. Div. of Pub. Utils. *Page 9 Carriers of R.I., 824 A.2d 1282, 1286 (R.I. 2003) (citations omitted). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Baker v. Dep't of Employment Training Bd. of Review,637 A.2d 360, 363 (quoting Milardo v. Coastal Res. Mgmt. Council,434 A.2d 266, 272 (R.I. 1981)). Questions of law are not binding upon the court and are reviewed de novo. Bunch v. Bd. of Review, R.I. Dep't of Empl. Training, 690 A.2d 335, 337 (R.I. 1997); Narragansett Wire Co. v.Norberg, 118 R.I. 596, 607, 376 A.2d 1, 6 (1977). It is inherent in the power of this Court to order a remand to the administrative agency to "correct deficiencies in the record and thus afford the litigants a meaningful review." Birchwood Realty, Inc. v. Grant, 627 A.2d 827, 834
(R.I. 1993) (quoting Lemoine v. Dep't of Mental Health, Retardation,and Hospitals, 113 R.I. 285, 290, 320 A.2d 611, 614 (1974)).
 III Determining Eligibility under the Katie Beckett Program
DHS is an agency within the executive branch of state government that is responsible for the management, supervision and control of social service programs, including medical assistance programs. G.L. 1956 §§42-12-1, 40-8-1, 40-8-3. DHS is empowered to promulgate rules and regulations as it deems necessary and proper for the administration of its medical assistance program; however, in order to receive federal funding, DHS's rules and regulations must comport with the provisions of Title XIX of the federal Social Security Act. 42 U.S.C. § 1396; G.L. 1956 § 40-8-13.
The Katie Beckett Program is a medical assistance program offered by DHS that enables certain disabled children to be cared for at home instead of in an institution. To be eligible for medical assistance through the Katie Beckett Program, a child must be disabled and require the level of care provided in a hospital, a nursing facility (NF), or an intermediate care *Page 10 
facility/mentally retarded (ICF/MR). 42 U.S.C. § 1396(a)(e)(3)(A);42 C.F.R. § 435.225 (2007); C.R.I.R. §§ 0394.35.05, 0352.15.
DHS's Level of Care Guidelines ("Guidelines") set forth the criteria utilized to determine eligibility for medical assistance under the Katie Beckett Program. Specifically, DHS evaluates: (1) specialized interventions; (2) functional daily living skills; (3) safety and safety awareness; (4) health and nursing services; (5) family impact; and (6) other placement considerations. Guidelines, August 1, 2006, at 7-10. The Guidelines define each type of facility under the institutional level of care. Specific to the instant case, the Guidelines define
hospital care as follows:
 Hospital level of care is appropriate for children who continuously require the type of care ordinarily provided in a hospital, and who, without these services, would require frequent hospitalizations. This level of care is highly skilled and provided by professionals in amounts not normally available in a skilled nursing facility but available in a hospital. Id. at 5.
Those same Guidelines define nursing facility level of care as follows:
 Nursing facility level of care is appropriate for children who do not require acute hospital care, but who, on a regular basis, require licensed nursing services, rehabilitation services, or other health-related services ordinarily provided in an institution. Nursing facility level of care is usually inappropriate for children with behavioral health needs, mental illness or mental retardation unless the needs associated with these conditions are secondary to a more acute physical disorder. Id. at 6 (Emphasis added).
Appendix D of the Guidelines further define nursing facility level of care as follows:
 A nursing facility level of care is appropriate when the child requires complex skilled nursing care or comprehensive rehabilitative interventions throughout the day including the following:
 • The child requires specialized professional training and monitoring beyond those ordinarily expected of parents
 • The child requires skilled observation and assessment several times daily due to significant health needs *Page 11 
 • The child has unstable health, functional limitations, complicating conditions, cognitive or behavioral conditions, or is medically fragile such that there is a need for active care management
 • The child's impairment substantially interferes with the ability to engage in everyday activities and perform age appropriate activities of daily living at home and in the community, including but not limited to bathing, dressing, toileting, feeding, and walking/mobility
 • The child's daily routine is substantially altered by the need to complete these specialized, complex and time consuming treatments and medical interventions of self-care activities
 • The child needs complex care management and/or hands on care that substantially exceeds age appropriate assistance
 • The child needs restorative and rehabilitative or other special treatment. (Id. at Appendix D.)
A. Inconsistent Decisions
In this case, the primary issue is whether Emanuelle has "a disabling condition that requires, on a regular basis, services that would ordinarily be provided in an institution, or in this particular case that would normally be provided in a nursing facility or hospital." Pl.'s Ex. D at 10. Ricci maintains that the hearing officer was bound to adhere to existing precedent that she had established in a 2005 Decision wherein she granted medical assistance to a child, with the same level of care as that of Emanuelle, based on her determination that catheterization required skilled nursing care. Accordingly, Ricci asserts that the hearing officer failed to consistently apply DHS's Level of Care Criteria and Guidelines when she determined eligibility for medical assistance through the Katie Beckett Program in two factually similar cases.
In response, DHS argues that the appropriate standard for determining eligibility for medical assistance is not whether a child requires skilled nursing care, but whether the child requires the level of care provided in a hospital or nursing facility. DHS further maintains that the hearing officer was required to conduct a de novo review with no deference to prior decisions. *Page 12 
For purposes of this Court's review, the more appropriate issue is whether the hearing officer in this case was bound to adhere to factual determinations that she had established in the 2005 Decision. This Court must determine whether the hearings officer's refusal to follow the 2005 Decision was arbitrary and capricious.
It is well established that when an agency modifies established standards and practices, it must provide a reasoned explanation for such departures. New England Telephone Telegraph Co. v. Public UtilitiesCommission, 446 A.2d 1376, 1389 (R.I. 1982) (finding that a public utilities commission acted arbitrarily and capriciously when it applied its policy in a different manner without proper notice and rationale) (citations omitted). "An agency changing its course must supply a reasoned analysis indicating that prior policies and standards are being deliberately changed, not casually ignored, and if an agency glosses over or swerves from prior precedents without discussion it may cross the line from the tolerably terse to the intolerably mute." GreaterBoston Television Corp. v. Federal Communications Commission,444 F.2d 841, 852 (D.C. Cir. 1970), cert. denied, 403 U.S. 923, 91 S. Ct. 2229
(1971); see also Hatch v. Federal Energy Regulatory Commission,654 F.2d 825, 834 (D.C. Cir. 1981) (remanding decision for further explanation because of the agency's failure to explain its reasons for changing course).
More importantly, when an agency departs from a prior ruling, it "must explain its reasons and do more than enumerate factual differences, if any, between * * * [similar] cases; it must explain the relevance of those differences. . . ." Columbia Broadcasting System, Inc. v.Federal Communications Commission, 454 F.2d 1018, 1026-27 (D.D.C. 1971) (finding that an agency's failure to confront and explain differences between two facially conflicting decisions was an `inexcusable departure from the essential requirement of reasoned decision making'). *Page 13 
"The fact that different conclusions were reached based on the same underlying facts points to an arbitrary result." Community Care Centers,Inc. v. Indiana Dep't of Public Welfare, 523 N.E.2d 448, 451 (Ind.App. 2Dist. 1988) (finding that an agency acted arbitrarily and capriciously when its decision was inconsistent with prior analogous cases). This "rule of law is intended to eliminate the appearance as well as the reality of arbitrariness, and if the public's faith in its administrative agencies is to be maintained, it is imperative that these agencies act in a wholly rational, logical fashion, completely free from even the appearance of bias, prejudice and improper influence."Columbia Broadcasting System, Inc., 454 F.2d at 1027.
In this case, the hearing officer failed to confront and explain her departure from her determination that catheterization was skilled nursing care and her grant of medical assistance in the 2005 Decision based, in whole or in part, on that fact. Both the instant case and the 2005 Decision dealt with children who were diagnosed with Spina Bifida and required catheterization, bracing and physical therapy. In the 2005 Decision, the hearing officer granted the child medical assistance, specifically finding that catheterization was skilled nursing care and concluding that "[w]ithout the mother's willingness to be specifically trained and to perform the required service, the appellant would need this to be performed by a qualified medical person such as a nurse." Pl.'s Ex. A. Here, Ricci also argued that Emanuelle required skilled nursing care in the form of catheterization, and that a qualified nurse would have to perform this procedure if he or his wife were unavailable or unwilling to do so. However, the same hearing officer, who ruled in the 2005 Decision, denied Emanuelle medical assistance, simply characterizing Emanuelle's catheterization as "only performed every four hours, or six times a day." Pl.'s Ex. B. *Page 14 
DHS maintains that the standard for eligibility under the Katie Beckett Program is not skilled nursing care, but an institutional level of care; however, a review of the entire record reveals that the hearing officer in this case inconsistently applied DHS's Guidelines and Level of Care Criteria for determining eligibility under the Katie Beckett Program. At the same time, the Center for Child and Family Health ("CCFH"), a DHS center responsible for determining eligibility under the Katie Beckett Program, specifically developed Guidelines for determining Katie Beckett eligibility, "[t]o insure a consistent process."Guidelines, August 1, 2006, at 4.
Although the hearing officer made certain relevant findings of fact in this case, she failed to enumerate the factual differences between the instant case and the 2005 Decision or, for that matter, explain the relevance of those differences in relation to DHS's nursing facility level of care criteria. Instead, even after having been confronted with the relevance of the 2005 Decision, the hearing officer simply concluded that:
 Though similarities are evident in the two cases, there are also differences in all three of these areas. Therefore, it cannot be concluded, as the appellant's father proposes, that since both children have been diagnosed with the same condition and that since both require catheterization, bracing, and PT, that this appellant should also receive the same favorable decisions as was awarded the child in the prior Administrative decision. Pl.'s Ex. B.
"The fact that different conclusions were reached based on the same underlying facts points to an arbitrary result." Community Care Centers,Inc., 523 N.E.2d at 451. Public policy compels DHS to establish and follow clear and uniform standards for determining eligibility under the Katie Beckett Program. See Pastore v. Samson, 900 A.2d 1067, 1077 (R.I. 2006) (stating that "[p]erhaps the most important and familiar argument for stare decisis is one of public legitimacy."). Because the hearing officer in this case rendered two inconsistent decisions on what appear to be substantially similar facts, absent a well-reasoned analysis, this Court finds that said decision was arbitrary and capricious. *Page 15 
B. Findings of Fact
Ricci next argues that the hearing officer in this case erred when she refused to engage in a comparison between Emanuelle's case and the factually similar 2005 Decision. Additionally, Ricci argues that the hearing officer erred because she failed to consider all of DHS's nursing facility level of care criteria in making her decision to deny Emanuelle benefits. DHS counters, arguing that the hearing officer set forth and substantiated specific findings of fact to support her decision and that DHS retains complete discretion in applying its nursing facility level of care criteria in any given case.
Agency decisions "shall include findings of fact and conclusions of law, separately stated. Findings of fact, if set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings." G.L. 1956 § 42-35-12. "An administrative decision that fails to include findings of fact required by statute cannot be upheld." Sakonnet Rogers, Inc. v. Coastal ResourcesMgt. Council, 536 A.2d 893, 896-97 (R.I. 1988). "The absence of required [factual] findings makes judicial review impossible." EastGreenwich Yacht Club et al. v. Coastal Resources Management Council etal, 118 R.I. 559, 569, 376 A.2d 682, 687 (1977) (remanding a case to the Coastal Resources Management Council because the agency had neglected to include any basic findings in its decision). "When an agency structures its decision solely by summarizing evidence presented by the contending parties and describing the parties' opposing views, without making specific factual findings in support of its own conclusions, it fails to meet its statutory obligation to make a concise and explicit statement of the underlying facts supporting [its] findings, and its order will therefore *Page 16 
be vacated and remanded for a new hearing." In re Support EnforcementOfficers I, 781 A.2d 1021, 1027 (N.H. 2001) (remanding agency decision because it failed to set forth specific findings of fact to support its conclusion).
In this case, the hearing officer's findings of fact were inadequate to support her decision to deny Emanuelle medical assistance because those findings lacked a comparison between the 2005 Decision and Emanuelle's case. Instead of addressing the arguments that Ricci made during the supplemental hearing concerning the relevance of the 2005 Decision, the hearing officer simply concluded that:
 A full comparison analysis of the two cases is impossible when only the prior decision, and not the full record in that case is available, and this appeals officer will therefore refrain from attempting such. In order for a fair and accurate decision to be made, and to avoid acting in an arbitrary and capricious manner, the appeals officer must review and consider each case individually, separate and apart from all others. Pl.'s Ex. D.
Furthermore, the hearing officer did not afford a meaningful review in this case because the findings of fact did not include a complete consideration of all relevant factors used to determine eligibility for medical assistance under the nursing facility level of care criteria.
When the record findings are not sufficiently developed, the Superior Court has the authority to remand a case "to correct deficiencies in the record and thus afford the litigants a meaningful review." Lemoine v.Department of Mental Health, Retardation Hospital., 113 R.I. 285, 290,320 A.2d 611, 614 (1974) (remanding where the hearing officer failed to consider certain evidence and thus, failed to provide an adequate record). This Court will not search the record for evidence to support DHS's decision and will not decide for itself what is proper under the circumstances. Hooper v. Goldstein, 104 R.I. 32, 44-45, 241 A.2d 809,815-16 *Page 17 
(1968). Therefore, this Court finds that the hearing's officer's decision to deny Emanuelle medical assistance through the Katie Beckett Program was arbitrary and capricious.
C. Ex parte Communications
Finally, during oral argument, Ricci alleged that a review of the entire record in this case supports a reasonable inference that the DHS hearing officer engaged in ex parte communications with DHS personnel. Referring to the Second Decision, Ricci maintains that the hearing officer improperly relied upon Dr. Price's opinion, that Emanuelle did not meet the level of care required for medical assistance, because the supplemental record is silent as to any opinion rendered by Dr. Price.
DHS counters, arguing that there is no evidence to support Ricci's allegation and assures this Court that it fully complied with a restraining order, in effect at the time of said proceedings, which enjoined "DHS hearing officers from consulting with other DHS personnel on specific matters before them `without giving appropriate notice to the applicant' and an opportunity for the applicant to cross examine any such personnel." Arnold v. Lebel, No. 2006-254 2007, R.I. LEXIS 35, at *3 (R.I. December 24, 2007).
Section 42-35-13 of the Rhode Island Administrative Procedures Act ("APA") prohibits DHS from engaging in "ex parte communications during the administrative adjudication of contested cases." Id. at * 14.[3]
In Arnold, the Rhode Island Supreme Court recently held that:
 Unless the parties are given notice and an opportunity to respond on the record, including cross-examination, if appropriate, a DHS hearing officer may not communicate with anyone, including DHS staff members, about contested adjudicatory facts — including, but not limited to, test results, specific diagnostic information, opinions concerning the severity of an applicant's medical *Page 18 
conditions, or overall assessment of a client's disabilities or disability status. All facts and opinions, including opinions of agency professionals and staff, as well as information obtained from an outside source, such as medical text or Internet, must be included on the record if the hearing officer plans to base his final decision on such facts. In short, no litigious facts should reach the decision-maker off the record in an administrative hearing. Id. at * 17.
The Court further explained that "DHS hearing officers are required to guard against the inherent unfairness of secret evidence, but they are not required to isolate themselves from the agency." Id. at * 18.
In the instant matter, there is no evidence in the record suggesting that DHS or the hearing officer engaged in ex parte communications with Dr. Price. A supplemental hearing was held subsequent to the initial administrative hearing on a Motion to Reconsider. Dr. Price testified at the initial hearing, but did not testify at the supplemental hearing. Because the supplemental hearing was not a new hearing, but an extension of the initial hearing, the hearing officer appropriately considered the evidence on record. Accordingly, the agency did not act arbitrarily or capriciously and did not violate Ricci's due process rights.
 IV Conclusion
After a review of the entire record, this Court finds that the hearing officer's decision to deny Emanuelle medical assistance through the Katie Beckett Program was arbitrary and capricious. Consequently, substantial rights of plaintiff have been prejudiced. Although Ricci argues that a remand would be improper because it would delay Emanuelle's receipt of medical assistance, this Court is of the opinion that a remand here is both necessary and proper in order to give the DHS "an opportunity to clarify and complete its decision." Id.;see Macera v. Cerra, 789 A.2d 890, 894-95 (R.I. 2002) (refusing to remand where additional fact-finding was unnecessary and would serve no useful purpose); Randall v. Sullivan, 956 F.2d 105, 108
(5th *Page 19 
Cir. 1992) (remanding eight-year-old case would be unconscionable because of agency's mistaken reliance on improper medical report and applicant's extensive medical record); Sakonnet Rogers, Inc.,536 A.2d at 897 (remanding a "petition filed seven years ago would prejudice the right of the petitioner to a final adjudication of his petition within a reasonable period."). Accordingly, this Court remands this case to DHS for further proceedings consistent with this Decision, to be adjudicated within a reasonable period of time. Moreover, in light ofArnold, this Court must exercise an abundance of caution when confronted with an allegation of ex parte communications during the administrative adjudication of a contested case. Therefore, on remand, this Court orders DHS to clarify that there has been no violation ofArnold.
As this matter is remanded for further consideration in accordance with this Court's ruling, Ricci's request for attorney's fees is hereby reserved pending a final resolution of this case. This Court retains jurisdiction.
Counsel shall submit the appropriate order for entry.
[1] In the 2005 Decision, DHS initially denied the child medical assistance through the Katie Beckett Program; however, on appeal, the same hearing officer reversed DHS's decision and granted medical assistance under the program. Pl.'s Ex. A.
[2] In his motion for reconsideration, Ricci also argued that the hearing officer inappropriately gave weight to a DHS medical evaluation form (AP72.1) in which Dr. Silversmith, Emanuelle's primary care physician, opined that Emanuelle failed to meet the requisite level of care required for medical assistance through the Katie Beckett Program. Pl.'s Ex. C. Ricci argued that (1) DHS failed to send Dr. Silversmith the criteria used to determine whether a child met the requisite level of care; (2) Dr. Silversmith incorrectly interpreted the question on the form, which asked "[d]oes this child meet the level of care of hospital, nursing facility, or ICF-MR group home?;" and (3) Dr. Silversmith currently opined that Emanuelle met the level of care criteria.Id. At the supplemental hearing, DHS acknowledged that the form is often misinterpreted and that DHS does not give any weight to the form when determining eligibility for medical assistance. Pl.'s Ex. D. In a January 29, 2006 decision, the hearing officer held that Dr. Silversmith's opinion on the form as to whether Emanuelle met the institutional level of care would be disregarded. Id.
[3] A contested case is defined as "a proceeding, including but not restricted to ratemaking, price fixing, and licensing, in which the legal rights, duties, or privileges of a specific party are required by law to be determined by an agency after an opportunity for hearing." Section 42-35-1(3).