DECISION
Before this Court is a timely appeal by Petitioner/Respondent Loungxay, Inc., ("Loungxay, Inc.") d/b/a Warwick Banquet Hall or Catfish Grille from an April 17, 2006 decision of a hearing officer of the Department of Labor and Training ("Department"), ordering the payment of back wages to Respondent/Petitioner Joseph Giocastro ("Giocastro"). Loungxay, Inc., seeks reversal of that administrative decision, contending that Giocastro was not a salaried employee of Loungxay, Inc., but a partner or joint venturer who was to be paid as long as profits permitted. Giocastro counters that he was both an investor and employee of Loungxay, Inc., and that his salary was not contingent upon business profits. Jurisdiction is pursuant to G.L. 1956 § 42-35-15. For the reasons set forth in this Decision, this Court remands this case to the Department for further proceedings consistent with this Decision.
 I Facts and Travel
On April 7, 2005, Giocastro filed a complaint for unpaid wages with the Department's Division of Labor Standards, claiming that Loungxay, Inc., owed him back wages in the amount *Page 2 
of eight thousand dollars for twenty-one weeks of work. Petitioner's Ex. 1.[1] The wage dispute could not be resolved, and Giocastro requested an administrative hearing. In a letter dated December 13, 2005, the Department notified Loungxay, Inc., that a Pre-Hearing Conference was scheduled on March 27, 2006, and a hearing would be held on April 11, 2006. Petitioner's Ex. 2. In a subsequent letter, dated February 22, 2006, the Department notified Loungxay, Inc., that the Pre-Hearing Conference had been rescheduled to March 30, 2006. Petitioner's Ex. 3. Giocastro did not appear at the Pre-Hearing Conference held on March 30, 2006, but appeared and provided testimony on his own behalf at the April 11, 2006 hearing. Hr'g Tr., April 11, 2006. Loungxay, Inc., failed to appear at the April 11, 2006 hearing, but was represented by an attorney, who did attend the hearing.
At the outset of the hearing, counsel and Giocastro each introduced several exhibits into evidence. Id.[2] Giocastro then testified that in January of 2004, he approached Lei Loungxay ("Lei"), the son of the owner of Loungxay, Inc., about investing in the business. Hr'g Tr., April 11, 2006 at 13. The two men subsequently entered into an agreement wherein Giocastro executed a promissory note in the amount of ten thousand dollars in exchange for stock in the *Page 3 
business. Id. Giocastro further testified that he informed Lei of his need to be paid weekly in order to fulfill his obligation to pay child support. Id. Thereafter, Giocastro claimed that Lei orally agreed to pay him a salary of four hundred dollars a week. Id. From the period of January 1, 2004 to November 25, 2004, Giocastro testified that he worked as a manager at Loungxay, Inc., and was responsible for hiring and firing staff, ordering alcohol, and booking live entertainment.Id. at 13. It is undisputed that Giocastro was paid four hundred dollars a week from the period of January 1, 2004 to July 1, 2004. Id.
During the hearing Giocastro admitted that, in July of 2004, Lei, who served as his supervisor, informed him that he could no longer afford to pay himself or Giocastro, due to financial constraints. Id. at 13. Nonetheless, Giocastro testified that he continued to work for twenty-one weeks without pay. Id. at 13-16, 44. Throughout this twenty-one week period, however, Giocastro claimed that he continuously asked Lei for his salary, but was told by Lei that he would eventually be paid. Id. at 14. The following exchange took place during the hearing:
 The Hearing Officer: So you worked without a paycheck for 21 weeks?
 Mr. Caldarone: * * * *
 The Witness: I fell behind in my child support. At the time that I went into the agreement and I gave him the money up front, I told him I needed to get a salary. That was part of what I needed.
 The Hearing Officer: No-strings-attached salary?
 The Witness: A salary.
 The Hearing Officer: That wasn't depended upon company profits?
 The Witness: Not, at all.
 The Hearing Officer: Well, okay. That's your testimony. I understand that, but it's kind of unusual for — to me anyway, for somebody to *Page 4 
work for — well, 21 weeks. That's about five months. For anybody to work — I know I wouldn't work here for five months if I didn't get a paycheck. I would be out the door, unless I were an owner or joint venturer. Go ahead.
 The Witness: Did you ever see a horse with a carrot in front of them?
 The Hearing Officer: Your business arrangement here. You were waiting for that pot of gold at the end of the rainbow?
 The Witness: That was the whole intention. The whole intention was, at some point, this was going to be part my business. Id. at 44-45.
On November 25, 2004, Loungxay, Inc., discharged Giocastro. Loungxay, Inc., did not pay Giocastro a weekly salary from the period of July 1, 2004 to November 25, 2004.[3]
Throughout cross examination, Counsel sought to establish that Loungxay, Inc., and Giocastro formed a joint venture type relationship wherein they each were paid a four hundred dollar draw so long as profits permitted.[4] Loungxay, Inc., agreed that Giocastro could simultaneously be both an investor and employee of Loungxay, Inc., but contended that Giocastro's actions — such as continuing to work for 21 weeks without pay, requesting to lease *Page 5 
the business's premises, working a ninety-eight hour week, publicly advertising himself as the owner of Loungxay, Inc., and registering the business' name for his exclusive use — supported the existence of a partnership or joint venture type relationship, not an employee/employer relationship. Id. at 20-23, 36-44, 51-55. Assuming arguendo that an employee/employer relationship had existed, Loungxay, Inc., maintained that such relationship terminated on July 1, 2004, when Giocastro agreed to work for twenty-one weeks without pay despite having been told by Loungxay, Inc., that the company was insolvent and could no longer afford to pay him.
In a decision dated April 17, 2006, the hearing officer awarded Giocastro back wages in the amount of eight thousand dollars. Decision, April 11, 2006 at 1-2. In doing so, the hearing officer made the following finds of fact:
 From the evidence presented, it is clear that the petitioner was employed by respondent from 1/1/04 to 11/24/04. He was also an investor in his employer's business. The status of employee and investor are not mutually exclusive. The petitioner testified that his agreement with his employer was to be paid a salary of $400./week for work. He testified that the $400./week was no-strings-attached salary, which was not dependent upon the profitability of the business. He testified that he explained to his employer, Lei Loungxay that he had child support obligations and had to be paid a steady salary of $400./week. Despite aggressive cross-examination by counsel for the respondent, the petitioner's testimony was left in tack, and was not rendered inherently improbable. The lack of live testimony from the respondent left the petitioner's testimony uncontradicted. Id. (Emphasis added).
The hearing officer elaborated stating as follows:
 The issue for the hearing officer was whether or not the payment of $400./week was intended to be a salary, or a draw conditional upon profitability of the business. On that issue there was only the live testimony of the petitioner, who stated unequivocally that the payment of $400./week was intended as a flat salary, payable regardless of the profitability of the business. Petitioner and respondent agreed that he was also an investor in the employer's business. Id.
Citing G.L. 1956 § 28-14-4(a), the hearing officer concluded that "[i]n reviewing the testimony and evidence presented, it is clear that the petitioner worked for the respondent from 7/1/04 to *Page 6 
11/25/04, and was not paid for that period of time." Id.[5]
Loungxay, Inc., subsequently filed a Motion to Reopen, contesting the hearing officer's reliance on Giocastro's uncontradicted testimony. Loungxay, Inc., also argued that it would have presented live testimony at the April 11, 2006 hearing, but for the Department's failure to provide it with adequate notice of the hearing date and its misimpression about the adjudicatory nature of that hearing. The hearing officer denied the Motion to Reopen. On May 26, 2006, Loungxay, Inc., filed a timely appeal to the Superior Court.
On appeal, Loungxay, Inc., argues that the hearing officer's decision to award Giocastro back wages was clearly erroneous in view of the reliable, probative and substantial evidence on the whole record because the evidence established that from at least July 1, 2004, until November 23, 2004, Giocastro agreed to work for 21 weeks without pay, not as a salaried employee, but as a joint venturer who hoped to protect his financial investment. Loungxay, Inc., argues that the Department provided it with inadequate notice of the April 11, 2006, hearing date. Loungxay, Inc., also argues that its misimpression about the adjudicatory nature of the April 11, 2006, hearing was justified. Specifically, Loungxay, Inc., claims that because Giocastro failed to appear at the March 30, 2006, Pre-Hearing Conference, it was under the impression that the scheduled April 11, 2006, hearing date would be a continuation of the Pre-Hearing Conference, and not a hearing on the merits. Loungxay, Inc., further maintains that the hearing officer erred when he based his decision solely upon Giocastro's uncontradicted testimony, without assessing Giocastro's credibility or considering its full exhibit evidence.[6] In *Page 7 
response, Giocastro asserts that the Department provided Loungxay, Inc., with adequate notice of the April 11, 2006, hearing date and that his positive, uncontroverted testimony established that he was both an investor and employee of Loungxay, Inc., who was not paid for twenty-one weeks of work.
 II II Standard of Review
This Court's review of an administrative decision is guided by the provisions of R.I. Gen. Laws 1956 § 42-35-15(g), which states as follows:
 The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inference, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion
In reviewing an agency decision, this Court is limited to an examination of the certified record in deciding whether the agency's decision is supported by substantial evidence. Center for Behavioral Health, R.I.,Inc. v. Barros, 710 A.2d 680, 684 (R.I. 1998) (citations omitted). *Page 8 
Substantial evidence has been defined as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance."Newport Shipyard Inc. v. R.I. Comm'n for Human Rights, 484 A.2d 893, 897
(R.I. 1994). This Court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.Interstate Navigation Co. v. Div. of Pub. Utils. Carriers ofR.I., 824 A.2d 1282, 1286 (R.I. 2003) (citations omitted). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record."Baker v. Dep't of Employment Training Bd. of Review, 637 A.2d 360, 363
(quoting Milardo v. Coastal Res. Mgmt. Council, 434 A.2d 266, 272 (R.I. 1981)). Questions of law are not binding upon the court and are reviewed de novo. Bunch v. Bd. of Review, R.I. Dep't of Empl. Training,690 A.2d 335, 337 (R.I. 1997); Narragansett Wire Co. v. Norberg,118 R.I. 596, 607, 376 A.2d 1, 6 (1977). It is inherent in the power of this Court to order a remand to the administrative agency to "correct deficiencies in the record and thus afford the litigants a meaningful review." Birchwood Realty, Inc. v. Grant, 627 A.2d 827, 834 (R.I. 1993) (quoting Lemoine v. Dep't of Mental Health, Retardation, andHospitals, 113 R.I. 285, 290, 320 A.2d 611, 614 (1974)).
 III Analysis A Notice under the APA
The first issue concerns whether Loungxay, Inc., received adequate notice of the April 11, 2006 hearing date pursuant to the notice requirements under G.L. 1956 § 42-35-9 of the Rhode Island Administrative Procedures Act. As noted above, Loungxay, Inc., contends that it was not afforded the opportunity to present crucial and relevant testimony at the April 11, 2006 *Page 9 
hearing due to the Department's failure to provide it with adequate notice of the hearing date and its misimpression about the adjudicatory nature of that hearing. Loungxay, Inc., claims that because Giocastro failed to appear at the March 30, 2006 Pre-Hearing Conference, it was under the impression that the scheduled April 11, 2006 hearing date would be a continuation of the Pre-Hearing Conference, and not a hearing on the merits. In response, Giocastro argues that Loungxay, Inc., received adequate notice of the hearing date and, thus, there was no procedural error merely because Loungxay, Inc., failed to appear at the hearing. Giocastro further highlights that although Loungxay, Inc., failed to appear at the hearing, it was competently represented by counsel, who presented evidence and conducted cross examination on its behalf.
Loungxay, Inc.'s, misimpression about the adjudicatory nature of the April 11, 2006 hearing was not justified. Here, counsel did not request a continuance when Giocastro failed to appear at the March 30, 2006 Pre-Hearing Conference. Counsel instead assumed that the Pre-Hearing Conference had been rescheduled and would be heard on the scheduled April 11, 2006 hearing date. Only after the hearing officer issued the decision did counsel file a Motion to Reopen based upon this alleged misimpression. Moreover, Loungxay, Inc.'s, contention that the Department may have perpetuated its misimpression when it failed to confirm the adjudicatory nature of the April 11, 2006 hearing, is without merit. In a letter dated December 13, 2005, the Department specifically notified Loungxay, Inc., that a hearing would be held on April 11, 2006. Petitioner's Ex. 2. Having provided Loungxay Inc., with an initial notice of the April 11, 2006 hearing date, the Department was not duty-bound to reconfirm the adjudicatory nature of that hearing after Giocastro failed to appear at the scheduled Pre-Hearing Conference. Therefore, this Court finds that the record in this case does not support a genuine miscommunication between the Department and Loungxay, Inc., about the adjudicatory nature of the April 11, 2006 hearing. *Page 10 
Nonetheless, the record does reveal that the Department provided Loungxay, Inc., with inadequate notice of the April 11, 2006 hearing date. Section 42-35-9(a) provides that "[i]n any contested case, all parties shall be afforded an opportunity for a hearing after reasonable notice." Reasonable notice shall include: (1) "a statement of the time, place, and nature of the hearing;" (2) "a statement of the legal authority and jurisdiction under which the hearing is to be held;" (3) "a reference to the particular sections of the statutes and rules involved;" and (4) "a short and plain statement of the matters inserted." Section 42-35-9(b)(1)(2)(3)(4). "These and similar requirements are obviously intended to assure that a party is apprised of the nature of the hearing so that he can adequately prepare."Correia v. Norberg, 120 R.I. 793, 801, 391 A.2d 94, 98 (1978).
In this case, the Department sent Loungxay, Inc., a letter dated December 13, 2005, which identified the time, place, and nature of the March 27, 2006 Pre-Hearing Conference and April 11, 2006 hearing, but failed to include the additional information required under § 42-35-9, such as "a statement of the legal authority and jurisdiction under which the hearing is to be held;" "a reference to the particular sections of the statutes and rules involved;" and "a short and plain statement of the matters inserted." Section 42-35-9(2)(3(4); Petitioner's Ex. 2. Accordingly, this Court finds that the Department provided Loungxay, Inc.'s, with inadequate notice of the hearing date and, as such, violated Loungxay Inc.'s, due process rights. Millett v. HoistingEngineers' Licensing Division of the Department of Labor, 119 R.I. 285,296, 377 A.2d 229, 235-36 (1977) ("It is well established that due process within administrative procedures requires the opportunity to be heard `at a meaningful time and in a meaningful manner.'"). *Page 11 
 B Uncontradicted Testimony
The second issue on appeal concerns whether the hearing officer erred when he based his decision solely upon Giocastro's uncontradicted testimony. Loungxay, Inc., contends that the hearing officer applied the wrong evidentiary standard by relying solely upon Giocastro's uncontradicted testimony, instead of adopting the fair preponderance of the evidence standard. Loungxay, Inc., further contends that the hearing officer failed to assess Giocastro's credibility. Giocastro counters that uncontroverted testimony is ordinarily conclusive upon the trier of fact and therefore, his testimony that he was owed back wages should bind the hearing officer.
An administrative hearing officer's decision must be supported by substantial evidence, not by a fair preponderance of the evidence.Center for Behavioral Health, 710 A.2d at 684.[7] In certain circumstances, however, a hearing officer's decision may be supported by the uncontradicted testimony of a witness. Correia v. John H. Norberg,Tax Administrator, 120 R.I. 793, 800, 391 A.2d 94, 98 (1978). The Rhode Island Supreme Court has "accepted the view that the positive testimony of a witness, when uncontradicted and unimpeached by other positive testimony or by circumstantial evidence, whether extrinsic or intrinsic, cannot be disregarded by the trier of fact but must control the findings thereof." Id. Therefore, the trier of fact may reject a witnesses' uncontradicted testimony "if he [or she] found it to be plagued by inherent improbabilities or contradictions, but to do so he [or she] must state the reasons for his [or her] rejection." Correia,120 R.I. at 800, 391 A.2d at 98; see also Stevinson v. Labor Industrial *Page 12 Relations Commission, Division of Employment, 654 S.W.2d 373, 374-75
(Mo.App.S.D. 1983) (stating that "[a]n administrative agency may not arbitrarily disregard or ignore the testimony of a witness not shown to have been disbelieved by the agency and only if the agency makes a specific finding that the undisputed or unimpeached evidence is not entitled to credibility and is unworthy of belief may that evidence be disregarded.").
In this case, Giocastro was the only witness, and his testimony that the payment of four hundred dollars a week was intended to be a salary, not a draw conditional upon the profitability of the business, was not discredited by other positive testimony. Contrary to Loungxay Inc.'s, assertion that the hearing officer failed to assess Giocastro's credibility, the hearing officer actually found Giocastro credible when he determined that his testimony was "left in tack, and was not rendered inherently improbable." Decision, April 11, 2006 at 2.[8] When an administrative agency is the trier of fact, "[a] court must not substitute its judgment for that of the agency in regard to the credibility of the witnesses or the weight of the evidence concerning questions of fact." Costa v. Registrar of Motor Vehicles, 543 A.2d 1307,1309 (R.I. 1988); Abraham v. Board of Regents, 216 A.D.2d 812, 813
(N.Y.A.D. 3 Dept. 1995) (stating that "the resolution of issues of credibility is solely within the province of the administrative fact finder."). Therefore, this Court will not disturb findings based on credibility, unless it first determines that the hearing officer was clearly wrong. Costa, 543 A.2d at 1309. "The fact finder's determination on the credibility issue is clearly wrong if the record discloses that he must have been mistaken in his judgment or that in arriving at his judgment he misconceived or overlooked *Page 13 
important evidence." Laganiere v. Bonte Spinning Co., Inc.,103 R.I. 191, 197-98, 236 A.2d 256, 258-59 (1967).
Nonetheless, Loungxay, Inc., argues that the hearing officer was clearly wrong in finding that Giocastro's testimony was "left in tack, and was not rendered inherently improbable" because Giocastro's testimony was self-contradictory. Specifically, Loungxay, Inc., points to Giocastro's admission during the hearing that he continued to work for twenty-one weeks without pay, despite having been told by Loungxay, Inc., that the business was insolvent and could no longer afford to pay him. Given this admission, Loungxay, Inc., contends that Giocastro could not have continued to work with the expectation that he would be paid, but only with the hope to protect his financial investment. In his defense, Giocastro maintains that over the course of the disputed twenty-one week period, he continually asked to be paid and that Loungxay, Inc., had reassured him that he would eventually be paid.
Although it has been held that "[t]he testimony of a witness may be contradicted by the facts to which he testifies as completely as by direct adverse testimony," Giocastro's testimony that he continued to work for twenty-one weeks without pay, taken alone, is insufficient for this Court to conclusively conclude that he worked at his peril for twenty-one weeks. Correia, 120 R.I. at 800, 391 A.2d at 98; see alsoLaganiere, 103 R.I. at 194, 236 A.2d at 258 (stating that uncontradicted "testimony may also be disregarded if it lacks credence or is unworthy of belief, especially if the testimony is that of a party to the litigation or of an interested witness."). It is important to point out that Giocastro also testified that Lei continuously reassured him that he would eventually be paid for the twenty-one weeks of work. Loungxay, Inc., was not afforded the opportunity to present witnesses to oppose Giocastro's testimony on this issue because it received inadequate notice of the April 11, 2006 hearing date pursuant to the provision of § 42- *Page 14 
35-9. This Court therefore reserves its discretion to find that the hearing officer was clearly wrong when he found Giocastro's testimony credible.
 C Exhibit Evidence
The final issue on appeal is whether the hearing officer overlooked important exhibit evidence. Loungxay, Inc., argues that the hearing officer was clearly wrong or otherwise abused his discretion when he overlooked the full exhibit evidence, which it believed contradicted Giocastro's testimony.
In the case at bar, counsel for Loungxay, Inc., submitted several exhibits, which the hearing officer marked in full. Among these exhibits, were a newspaper article printed just two days after Giocastro was discharged, wherein he described himself as the owner of Loungxay, Inc., as well as financial records, which further established Giocastro's knowledge of the business's insolvency. Undoubtedly, Counsel for Loungxay, Inc., introduced these exhibits in order to refute Giocastro's testimony by establishing his status as a joint venturer and not an employee, as he had insisted. "It should be noted that [sic], where evidence has been admitted without objection, the evidence must be accorded its natural probative effect." Stein, Mitchell,Administrative Law, Section 30.01 (2007); see also Sye v. Wood Dale FireProtection District No. 1, 356 N.E.2d 938, 941 (Ill.App. 3d 1976) (finding that "[t]he parties brought before an administrative agency are entitled to have that body base its decision on evidence received at the hearing."); Little v. North Carolina State Bd. of Dental Examiners, 306 S.E.2d 534, 536 (N.C.App.Ct. 1983) (clarifying that "[i]n an administrative proceeding, it is the prerogative and duty of that administrative body, once all the evidence has been presented and considered, `to determine the weight and sufficiency of the evidence and the credibility of the witnesses, to draw inferences from the facts, and to appraise conflicting and circumstantial evidence.'"). While this *Page 15 
Court recognizes a hearing officer's discretion "in deciding what types of evidence it will receive and consider," this Court may, nonetheless, reverse the hearing officer's decision if it finds the decision to be "arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."Foster-Glocester Regional School Committee. v. Board of Review,Department of Labor and Training, 854 A.2d 1008, 1017 (R.I. 2004) (recognizing agency discretion to hear and consider evidence). Even if the hearing officer in this case was not clearly erroneous in accepting Giocastro's uncontradicted testimony as true, he was nevertheless arbitrary in not considering other conflicting evidence presented at trial. Therefore, this Court finds that, in rendering his decision, the hearing officer should have clarified that he had considered and rejected the disputed exhibit evidence.
 IV Conclusion
For the reasons stated here within, this Court finds that the decision of the hearing officer was arbitrary. Substantial rights of petitioner have been prejudiced. Accordingly, this Court remands this case to the Department for further proceedings consistent with this Decision, to be adjudicated within a reasonable period of time. A remand here is both necessary and proper in order to give the Department an opportunity to (1) comply with the notice requirements under G.L. 1956 § 42-35-9 of the Rhode Island Administrative Procedures Act, thereby giving Loungxay, Inc. an opportunity to be present and heard; and (2) consider all of the evidence, including conflicting testimony and exhibits.
This Court will retain jurisdiction. Counsel shall submit the appropriate order for entry.
[1] In his complaint, Giocastro alleged as follows:
 Was told by Lei company needed money to survive I would be made partner[.] In Sept[ember] Lei told me he was not going to be able to keep me at which time I demanded back pay monies I loaned Him. He changed his mind said He still needed me. By Nov[ember] no stocks were given to me no partnership was given to me I was asked to leave Nov[ember] 23 at which Time I demanded back pay loaned money[.] Petitioner's Ex. 1, Non-Payment of Wages Complaint Form, April 4, 2005.
[2] Giocastro's exhibits included: a copy of the complaint; a reply from Mr. Giocastro dated 5/23/05; Payroll records; 14 pages of Catfish Grill record; and Payroll records. Loungxay Inc.'s, exhibits included: a three-page letter from his counsel to the Department of Labor; a copy of the promissory note; a copy of the agreement dated 11/16/04; a letter from the Warwick Fire Department dated 11/29/05; two letters from the Warwick Fire Department; Warwick real estate taxes; Narragansett Electric bill; New England Gas bill dated 11/10/04; and Newspaper articles.
[3] At the hearing, Giocastro testified that he also had a breach of contract claim against Loungxay, Inc., pending in the Rhode Island Superior Court because Loungxay, Inc., retained his ten thousand dollar investment without transferring him stock. Hr'g Tr., April 11, 2006 at 17. The hearing officer made clear that any line of questioning or testimony concerning the breach of contract claim was prohibited.Id. at 34-35. Notwithstanding this admonition, Counsel attempted to question Giocastro about his criminal history and whether it would have prevented Loungxay, Inc., from transferring him stock, under the law.Id. at 29-35. In response to Counsel's inquiry, the hearing officer stated that "I don't need to get into credibility determinations to make my decision." Id. at 35. The hearing officer properly exercised his discretion when he limited his scope of inquiry and prohibited any line of questioning about the breach of contract claim pending in the Superior Court. Novosad v. Mitchell, 621 N.E.2d 960, 966 (Ill.App. 3d 1993) (holding that "a decision pursuant to an administrative hearing must be based upon testimony and other evidence received at the hearing, and a conclusion influenced by extraneous considerations must be set aside.").
[4] In Fireman's Fund Ins. Co. v. E. W. Burman, Inc., 120 R.I. 841,844, 391 A.2d 99, 101 (1978), the Rhode Island Supreme Court defined a joint venture as "an undertaking by two or more persons jointly to carry out a single business enterprise for profit."
[5] Section 28-14-4(a) states that "[w]henever an employee separates or is separated from the payroll of an employer, the unpaid wages or compensation of the employee shall become due on the next regular payday and payable at the usual place of payment."
[6] Loungxay Inc., also argues that Giocastro's breach of contract claim pending against it in the Superior Court precludes him from recovering back wages under a theory against double compensation. It has long been held that "[a] plaintiff's recovery against a defendant under one tort theory precludes any duplicative recovery for the same damages under some other tort theory." Graff v. Motta, 695 A.2d 486, 492 (R.I. 1997) (precluding petitioner's recovery where is damages arose from a singular event) (citing DeCosta v. Viacom International, Inc.,758 F. Supp. 807, 812 (D.R.I. 1991) ("a plaintiff may not get additional bites of the apple by demanding multiple forms of relief for the same injury or by cloaking a single claim in a variety of legal theories.")). This Court finds that the issue of double compensation is not properly considered here because Giocastro has neither been paid back wages nor been compensated for his breach of contract claim.
[7] Substantial evidence has been defined as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance." Newport Shipyard, 484 A.2d at 897; see also In reRegistration of Electric Lightwave, Inc., 869 P.2d 1045 (Wn. 2d 1994) (stating that "[s]ubstantial evidence is evidence in sufficient quantum to persuade a fair-minded person of the truth of the declared premises.").
[8] It is important to note that the hearing officer's comment during the hearing that "I don't need to get into credibility determinations to make my decision" was not a blanket statement; instead, it was a comment made in response to Counsel's attempt to offer irrelevant evidence of Giocastro's prior felony convictions. Hr'g Tr., April 11, 2006 at 29-35. *Page 1